## CAVER v. LIVERMAN et al.

### No. 6115.

Court of Civil Appeals of Texas. Texarkana.
May 10, 1944.

Rehearing Denied May 18, 1944.

Carney & Carney, of Atlanta, for appellant.

S. I. Cornett, of Linden, and B. F. Whitworth, of Houston, for appellees.

WILLIAMS, Justice.

This trespass to try title action involves a strip of land 100 feet wide (North and South) and 4000 or more feet long, formerly the right of way which was previously owned and used by the Jefferson Lumber Company on which it built a railroad to and did haul logs to its sawmill in Atlanta, Texas. In building the roadbed which ran approximately in the center of the right of way and in an East-West direction the Lumber Company at various points on the right of way constructed dumps and made excavations. Forty-five years ago the railway iron was removed and its use as a right of way abandoned by the Lumber Company. Since then, up to filing of this suit, neither the Lumber Company nor its successors in title have exercised dominion over same and have not rendered it for taxation or paid any taxes thereon.

The South boundary line of the strip involved is also the South boundary line of the middle third and the North line of the South third of the John Lick H. R. Survey in Cass County. A deed from Mrs. C. E. Boyer to L. W. Boyer, dated December 19, 1918, filed for record the same day, which purports to convey to the latter a 208-acre tract out of the middle third of the Lick Survey, calls for the South boundary line of said middle third and the North boundary line of the South third as the South boundary of the 208-acre tract. The deeds from Young to Witt and from the latter to Mrs. Boyer, both executed and filed for record prior to 1918, contain the same description of the 208-acre tract. Deeds executed prior to the Young deed all excepted the strip from the 208-acre tract and called to go only to the North boundary of the strip. The deed into T. F. Crawford, dated December 26, 1913, filed for record in January 1914, which purports to convey into him 49¾ acres out of the middle third of the Lick Survey calls for the North boundary line

of the Jefferson Lumber Company right of way as the South boundary line of the 49¾-acre tract. The West line of this tract is a part of the East line of the 208-acre tract.

Appellant, John R. Caver, who on June 26, 1943, filed this suit against R. C. Liverman and L. D. Duncan, the purchasers of pine timber growing on the strip, and who owned 400 acres (the Perkins land) in the South third of the Lick Survey adjoining the strip on the South, obtained from one Bradford June 1, 1943, a quitclaim deed which purports to convey to Caver all rights and title of Bradford in the strip of land involved. L. W. Boyer and T. F. Crawford who were impleaded as warrantors in the respective timber deeds they had executed to Liverman and Duncan answered and filed cross-action against Caver. Boyer pleaded and relied upon title, sustained by the jury findings under the 5-, 10- and 25-year statutes of limitation, Articles 5509, 5510, 5518, Vernon's Ann.Tex.Civ. Statutes. Crawford pleaded and relied upon title, sustained by jury findings, under the 10- and the 25-year statutes of limitation, Articles 5510 and 5519a. Caver relies upon a record legal title into him out of the State. In the disposition of the points presented which attack the sufficiency of the evidence to support above jury findings, we will assume without determining it, that Bradford's deed lodged the record title in Caver.

The fences on the East and West boundary lines of the 49¾ acres extended South to the North boundary line of the right of way in 1913 when Crawford purchased this tract. There was no fence across its South boundary line. A rail fence on the South boundary line of the right of way was then being maintained by one Cy Perkins, who owned a 400-acre tract adjoining the South boundary line of the strip, and who pointed out the rail fence as marking the latter's North boundary line. In January 1914, Crawford under an agreement with Perkins extended his East and West fences across the strip and tied in with the rail fence so as to enclose the strip with the 49¾ acres under one fence. The fences so remained until 1925 or 1926 when the rail fence was destroyed by fire. Shortly thereafter, Crawford constructed a short span of fence near his Southeast and Southwest corners onto the South bank of deep cuts in the

right of way, using the deep cut as a natural barrier so as to turn cattle. The evidence reflects that in the fall and winter during each and every year from 1914 to the present, Crawford pastured stock within the enclosure, his stock having access to the strip in controversy. His stock would "graze in the old cut and on the South side of the cut." During this period he cut stove wood off the strip. The major part of the 49¾ acres was cultivated each year. No part of the strip was cultivated, it being badly cut up with dumps and cuts and unfit for cultivation. When above brief summary of the evidence is "considered most favorable to the verdict" and "interpreted * * * most favorable to the prevailing party," Barksdale v. Dobbins, Tex.Civ.App., 141 S.W.2d 1035, 1038, the finding in favor of Crawford on the 10-year statute of limitation will not be disturbed. Such portion of the right of way was claimed by Crawford through the years in good faith, used and enjoyed by him for the only purpose to which it was adapted, from 1914 to 1925 or 1926, a period of more than ten consecutive years, if not for many years longer. Article 5510, supra; Wallis v. Long, Tex. Civ.App., 75 S.W.2d 138.

■ The finding in favor of Crawford with respect to his claim of limitation under Article 5519a is without support in the evidence, in that Crawford failed to pay "taxes thereon annually before becoming delinquent for as many as twenty-five years during such period," having failed to pay before delinquency taxes for the years 1932 and 1940. Article 5519a, supra.

■ The 208-acre tract, which contained several sets of improvements and which was enclosed by a fence at the time Boyer and his parents moved upon it in the fall of 1917, has been used by Boyer or his tenants each and every year since in farming and stock raising. From 1918 on, Boyer rendered for taxation and paid taxes on 208 acres each year before delinquency, except for the year 1920. The evidence does not warrant a conclusion that any portion of the strip claimed by Boyer was cultivated for any consecutive number of years more than two, and this included only a few rows at a location near a pool and terrace. The fence which enclosed the 208-acre tract on the South remained in approximately the same position from 1917 to the present. The fence which followed in a general way the dump, sometimes South of it, did not extend far enough South to take up all the right of way, but enclosed at least half of same. The right of way, with the exception of a small patch here and there, was unsuitable for cultivation in a profitable way, being cut up with excavations, fill-ins, and dumps. During the five crops grown by Duke, a tenant of Boyer, 1933 to 1937, inclusive, the land on the strip down to the fence was used each fall and winter for pasturing the stock belonging to the farm. The cattle and work stock of the tenants would graze on the right of way. Firewood was cut from the right of way by tenants on the farm. According to Griffin, overseer of the farm for Boyer during the years 1936 to 1942, inclusive, the tenants on the farm, after the crops were gathered, would patch up the fences and turn their stock in and pasture the land within the entire enclosure through the fall and winter of each year. During the time Boyer owned this land there was never a fence on the North boundary line of the right of way so as to segregate it from the balance of the 208-acre tract. Such actual use of a part of the strip in the manner above set out, the land being suitable only for pasturage and timber, for the years 1933 up to and including 1942, a period of ten years, with the recordation of the deed which fixed "the boundaries of the possessor's claim" as the South boundary line of the right of way, is not insufficient to support the jury's finding in favor of Boyer under the 10-year statute of limitation. This finding will include the land to the boundaries as called for in his deed, namely, to the South boundary line of the strip in controversy. Article 5510, supra; Wallis v. Long, supra; 2 T.J. 237, Sec. 129; 2 C.J.S., Adverse Possession, § 228.

. In view of the conclusion just reached, we pretermit a discussion of the other jury findings in favor of Boyer. The other two points presented have been considered and are respectfully overruled.

The judgment of the trial court will be affirmed.

HARVEY, J., not sitting.