[COMMENT1] 

 

 

 

 

 

                                      COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-092-CV

 

 

SUSAN MEAD, AMY COLE,                                                 APPELLANTS

AND DON COLE TRUSTEES                                                                   

OF
THE MT COLE TRUST NO. 4

                                                   V.

 

RLMC, INC., RONALD L. McCUTCHIN                                      APPELLEES

FAMILY
PARTNERSHIP, LTD. 

A/K/A
RONALD McCUTCHIN 

FAMILY PARTNERSHIP, LTD.                                                                 

 

                                              ------------

 

            FROM
THE 393RD DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------








Appellants Susan Mead, Amy
Cole, and Don Cole, trustees of the MT Cole Trust No. 4, (ATrustees@) appeal the
trial court=s denial of
their motion for summary judgment and grant of summary judgment in favor of
Appellees RLMC, Inc. and Ronald L. McCutchin Family Partnership, Ltd.
(collectively Athe
McCutchins@).  In two issues on appeal, the Trustees argue
that (1) the trial court did not implicitly rule on the McCutchins= objections to the Trustees= summary judgment evidence, but rather expressly did not rule on the
objections, and therefore all of the Trustees= evidence should be considered by this court on appeal; and (2) the
trial court erred by granting summary judgment to the McCutchins on the issue
of adverse possession and by denying the Trustees= motion for summary judgment on the same issue.  Because we hold that the trial court did not
impliedly rule on the McCutchins= objections and that a genuine issue of material fact exists, we
reverse the trial court=s judgment.

Facts
and Procedural History

The MT Cole Trust No. 4 owns
several thousand acres in Denton County, Texas.  In 1981, Ronald Lee McCutchin bought a tract
of land (the AMcCutchin
property@) bordering the Trust=s property to the north, and in 1998, McCutchin conveyed the property
to Appellee Ronald McCutchin Family Partnership, Ltd.  Appellee RLMC, Inc. is the general partner of
that partnership.








In 2001, RLMC, acting as the
general partner of the partnership, entered into an oil and gas lease with
Western Chief Oil and Gas Co., and in 2003, Western drilled two wells on
property covered by the lease.  The
acreage on which the wells are located was separated by a fence line from what
is undisputedly McCutchin property.  This
fence has significance to the Trustees= arguments.

The Trustees brought suit
against the McCutchins on a claim of trespass to try title and sought
declaratory judgment, claiming title to the property on which the wells were
drilled.  The Trustees contend that the
Trust has acquired title to the property by adverse possession, specifically
the land north of what is undisputedly Trust property and south of the fence
line and what is undisputedly McCutchin property (the Adisputed acreage@).

The Trustees alleged in their
First Amended Petition and in their motion for summary judgment that, for at
least ten years, they have leased the disputed acreage to tenants who have used
the land to graze cattle, that the tenants have maintained and worked on the
fence separating the disputed acreage from the McCutchin property to prevent
cattle from escaping, and that cattle owned by the Trust=s tenants have continuously grazed on the property immediately south
of the fence from before 1950 to the present. 
They further claimed that although a fence has separated the disputed
acreage from the McCutchin property, no fence separated the disputed acreage
from the Trust=s property
until McCutchin had one built during the pendency of this lawsuit.  They also claim that the Trust=s property and the disputed acreage form one contiguous unit.








In their own motion for
summary judgment, the McCutchins claimed that the disputed acreage has never
been enclosed and that any grazing by the livestock of the Trust=s tenants has been sporadic. 
The trial court granted the McCutchins= summary judgment motion, and the Trustees appealed.

Standard
of Review








The function of summary
judgment practice is to eliminate patently unmeritorious claims and untenable
defenses.[1]  The purpose of the summary judgment rule is
to Aprovide a method of summarily terminating a case when it clearly
appears that only a question of law is involved and that there is no genuine
issue of fact.@[2]  In a summary judgment case,
the issue on appeal is whether the movant met the summary judgment burden by
establishing that no genuine issue of material fact exists and that the movant
is entitled to judgment as a matter of law.[3]  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.[4]

When reviewing a summary
judgment, we take as true all evidence favorable to the nonmovant, and we
indulge every reasonable inference and resolve any doubts in the nonmovant=s favor.[5]  Evidence that favors the movant=s position will not be considered unless it is uncontroverted.[6]








The summary judgment will be
affirmed only if the record establishes that the movant has conclusively proved
all essential elements of the movant=s cause of action or defense as a matter of law.[7]  A defendant who conclusively negates at least
one essential element of a cause of action is entitled to summary judgment on
that claim.[8]  Once the defendant produces sufficient
evidence to establish the right to summary judgment, the burden shifts to the
plaintiff to come forward with competent controverting evidence raising a
genuine issue of material fact with regard to the element challenged by the
defendant.[9]

When both parties move for
summary judgment and the trial court grants one motion and denies the other,
the reviewing court should review both parties= summary judgment evidence and determine all questions presented.[10]  The reviewing court should render the
judgment that the trial court should have rendered.[11]

Analysis








We first consider whether the
trial court implicitly ruled on the McCutchins= objections to the Trustees= summary judgment evidence.  A
trial court=s ruling on
an objection can be either express or implied.[12]  The McCutchins argue that we should apply Frazier
v. Yu[13]
and hold that the trial court impliedly ruled in favor of their objections to
the Trustees= summary
judgment evidence.  In Frazier,
the defendant objected that the plaintiff=s summary judgment evidence was not competent evidence and moved to
strike the plaintiff=s
affidavits.[14]  The trial court granted the motion and
entered a summary judgment for the defendant; on its docket sheet, the court
indicated that the plaintiff had not submitted any summary judgment evidence.[15]  The trial court=s order granting summary judgment stated that it had reviewed all Acompetent@ evidence.[16]  We held that this record showed that the
trial court had implicitly ruled on the objections.[17]








The Trustees, on the other
hand, argue that we should apply Wrenn v. GATX Logistics, Inc.[18]
and hold that the trial court did not impliedly rule on Appellees= objections.  In Wrenn,
GATX argued that the trial court impliedly sustained their objections to Wrenn=s summary judgment evidence.  We
distinguished Frazier because nothing in the record in Wrenn demonstrated
that the trial court had implicitly sustained GATX=s objections, whereas the record in Frazier supported such an
inference.[19]  We noted that A[w]hen we cannot determine what implied ruling is to be inferred, we
cannot expect the parties to be able to do so.@[20]

In this case, unlike in Frazier,
the record does not demonstrate that the trial court impliedly ruled on the
McCutchins= objections.  Here, the trial court first signed a judgment
granting the McCutchins= summary
judgment motion and their objections to the Trustees= summary judgment evidence.  The
Trustees= objected that they had not been notified that the trial court had
made a ruling on the objections and that under Rule 166a they had the right to
amend and cure any alleged defects.  The
trial court then rescinded its judgment. 
The McCutchins next submitted to the court a proposed order granting the
objections.  The  court did not sign it but instead signed a
judgment that did not contain a ruling on the objections.








As in Wrenn, the mere
fact that the trial court granted the McCutchins= summary judgment motion does not provide grounds for us to infer that
the trial court necessarily sustained the objections.[21]  It is just as possible that the trial court
considered the Trustees= summary
judgment evidence and concluded that the evidence did not raise a genuine issue
of material fact,[22]
particularly in light of the trial court=s rescinding the original judgment sustaining the objections, not
signing the proposed ruling granting the objections, and entering of a final
judgment that does not mention the objections. 
We therefore hold that we may consider the Trustees= summary judgment evidence in our review.[23]








We next consider whether the
trial court erred by granting the McCutchins= motion for summary judgment and by denying the Trustees= motion.  A claimant seeking to
establish adverse possession of a tract of land must show actual and visible
appropriation of the tract, Acommenced and continued under a claim of right that is inconsistent
with and is hostile to the claim of another person.@[24]  A claimant asserting adverse
possession under the ten-year limitation statute must additionally show
cultivation, use, or enjoyment of the property Ain peaceable and adverse possession@ for the statutory period.[25]  The claimant must show such cultivation, use,
or enjoyment by a preponderance of the evidence.[26]

A claimant may use grazing of
cattle or other animals to establish adverse possession of a tract of land;
however, such a claimant must generally show that the claimant Adesignedly enclosed@ the disputed tract.[27]  In their summary judgment motion, the
McCutchins cited Orsborn v. Deep Rock Oil Co. for the proposition that
to satisfy the continuous, open, obvious, and notorious elements of adverse
possession, Texas law requires more than occasional grazing on property unless
the property is enclosed by a Asolid fence.@[28]  The McCutchins are correct
that when a claimant maintains that grazing of cattle on the land gave the true
owner the requisite notice of the claimant=s adverse claim, the disputed tract must be enclosed by more than a
casual fence.[29]  We disagree, however, that Texas law requires
a claimant to enclose claimed land with a Asolid fence.@













Under the case law, fences
are either Acasual
fences@ or Adesigned
enclosures.@[30]  A fence is a Acasual fence@ if it
existed before the party claiming adverse possession took possession of the
land and the claimant does not demonstrate the purpose for which the fence was
built.[31]  In their brief, the McCutchins= incorrectly state that the Trustees could not have adversely
possessed the disputed acreage unless the tract was enclosed by a fence built
by the Coles.  The McCutchins are correct
that, for adverse possession purposes, a casual enclosure built by a third
party (neither the true owner nor the claimant) for that party=s own purpose Ahas no more
effect than if same had never come into existence.@[32]  Further, a casual fence cannot
be changed to a designed enclosure through mere repair or maintenance, even if
such repairs or maintenance were done Afor the express purpose of keeping the claimant=s animals within the enclosed area.@[33]  But a claimant may nevertheless support an adverse possession claim
with evidence of such a fence if the claimant shows that, through substantial
modification of the fence, the claimant has so changed the fence=s character Athat it
bec[ame] a designed enclosure.@[34]








Additionally, proof of a Adesigned enclosure@ is not required in every case. 
An exception to the requirement of a Adesigned enclosure@ applies when the claimant proves sufficient non-grazing use of the
disputed land Asuch that
the true owner would have notice of the hostile claim.@[35]  The Texas Supreme Court and
this court have further held that in some instances, a claimant using the
disputed land for grazing may establish title to the land through adverse
possession even when the land at issue has not been designedly enclosed.[36]  In Butler v. Hanson, the Texas Supreme
Court did not require evidence of a Adesigned enclosure@ and distinguished Orsborn based on the following facts: (1) in
Orsborn, cattle only occasionally grazed on the disputed land, whereas
in Butler, there was testimony that the disputed land was constantly
used for grazing; (2) in Orsborn, the State of Texas owned land between
the land owned by the claimant and the land the claimant sought to acquire by
adverse possession, such that the claimant had to Askip an unfenced tract@ to claim the land, whereas in Butler, the tracts in question
were contiguous and operated as a unit; (3) the claimant in Orsborn
merely made use of a fence built by another, but in Butler, the claimant
made modifications to the fence that the court found to be evidence that he had
made it his fence; and finally, (4) in Butler, evidence at trial
established that the general reputation in the community was that the property
bound by the fence was the claimant=s property.[37]  The facts in Butler, taken together,
evidenced actual and visible use of the disputed land by the claimant.[38]








In Perkins, this court
applied the same factors to find that although the claimants had not Adesignedly enclosed@ the disputed tract, the claimants had by their actions acquired title
to the tract through adverse possession.[39]  In that case, we held that the evidence
established that (1) the disputed tract had been constantly used for grazing;
(2) the disputed tract was contiguous to and fenced within the claimants= land, with both tracts operated as a unit; (3) the ranch managers of
the claimants=
predecessor-in-interest had Arebuilt and replaced water‑gapped portions of the fence,
modified portions of the fence, and always maintained the fence on behalf of@ their predecessor; and (4) the general reputation in the community
had always been that the disputed property was part of the claimants= land and that the fence was the boundary between the parties= land.[40]  We said that this evidence was sufficient
evidence of Aactual and
visible use of the property in dispute.@[41]








In summary, to be entitled to
summary judgment, the Trustees had to conclusively establish, in addition to
usual adverse possession elements, that they had Adesignedly enclosed@ the disputed acreage, or that they had made sufficient nongrazing use
of the disputed acreage such that the McCutchins would have had notice of the
Trustees= hostile claim.  This notice
requirement cannot be established by grazing alone but can be established by a
combination of grazing and other non-grazing activities, so long as, applying
the reasoning of Butler and Perkins, the Trust=s actions constituted actual and visible use by the Trust of the
disputed acreage.  The McCutchins had to
conclusively establish the opposite of each of these propositions, namely, that
the Trustees did not Adesignedly
enclose@ the disputed acreage, and that, under the reasoning of Butler
and Perkins, the Trustees= actions were insufficient to establish actual and visible use of the
disputed acreage.

To determine all the
questions presented, we will review the summary judgment evidence presented by
the parties.  We will discuss the
evidence as it relates to the requirements of sufficient use of the property
and enclosure.

Evidence Regarding the
Enclosure Requirement 

In his affidavit, Ronald McCutchin
stated that the disputed acreage is not enclosed and has never been
enclosed.  Cole=s affidavit disputes this statement, despite McCutchin=s claim that the statement is uncontroverted.  McCutchin himself stated that a fence line
existed between the disputed acreage and the rest of the McCutchin property,
though he claimed the fence has been in disrepair for several decades, allowing
cattle grazing on the disputed acreage to wander onto the rest of the McCutchin
property from time to time.








And Cole=s affidavit contradicts McCutchin=s claims, stating that Cole knows from personal knowledge that at
least from 1980 there has been a fence, made of wooden posts, steel posts, and
barbed wire, separating the disputed acreage and the rest of the McCutchin
property and running continuously from the east property line to the west
property line, and that when cattle have wandered onto the rest of the
McCutchin property, the Trustees= tenant returned the cattle to the disputed acreage/Trust property and
made repairs to the fence as needed. 
Cole also said that the disputed acreage has at all times for at least
the last twenty-five years been enclosed with the rest of the Trust
property.  Thus Cole=s affidavit directly controverts McCutchin=s assertions.

McCutchin stated that the
Coles never worked on the fence separating the disputed acreage from the rest
of the McCutchin property until after the wells were drilled, which Cole=s affidavit disputes, and McCutchin=s tenant Don Paddock stated that the fence had not been worked on by
the Coles between 1991 and when the wells were drilled.  Cole controverts these assertions in his
affidavit.  Cole stated that whenever his
tenant=s cattle strayed onto the undisputed McCutchin property, his tenant
made any needed repairs to the fence, and Paddack admitted that the cattle had
occasionally managed to stray onto the McCutchin property since he became
McCutchin=s tenant in
1991, controverting Paddack=s and McCutchin=s statement
that no work was done on the fence until after the wells were drilled.  Cole stated that the repairs made included
adding and replacing posts, and adding, stretching, and tying wire, and he also
stated that he himself has regularly checked on the fence over the years.

Evidence Regarding Sufficient
Use of the Property








McCutchin stated that from
time to time, his tenants have grazed cattle on the disputed acreage.  Don Cole stated in his affidavit that to his
knowledge, no cattle owned by McCutchin or his tenants have grazed on the
disputed acreage.  Paddock established
that he began leasing McCutchin property (not the disputed acreage) in 1991 and
that he uses the leased land for farming, and the McCutchins presented no other
evidence to the trial court establishing that the McCutchins or Paddock used
the disputed acreage for grazing or any other purpose during the statutory
period.








McCutchin stated that he has
been on the disputed acreage several times a year from the time he was a small
boy and he knows that there has never been a time when the Coles or any of
their tenants continuously occupied the disputed acreage.  He stated that he has never seen the Coles or
their tenants place any feeders, hay bales, or anything else on the disputed
acreage that would evidence an adverse claimant=s presence.  McCutchin also
stated that the Coles and their tenants only ever used the disputed acreage
when their cattle would, from time to time, wander onto the property, and that
the cattle would then return to what is undisputedly Trust land.  McCutchin thus admits that the Trustees= cattle have at least occasionally grazed on the disputed
acreage.  The McCutchin affidavit claims
that the disputed property has never been used for non-grazing activities, but
the Cole affidavit states that the disputed property has been used for grazing
and for Aranching activities.@    In his affidavit, Paddock
stated that he has observed cattle crossing onto the disputed acreage and
sometimes the rest of the McCutchin property 
because the fence line located at the boundary (presumably the boundary
between the disputed acreage and the undisputed McCutchin property, though he
does not specify) was insufficient to turn cattle.  He further stated that when the Trustees= tenant=s cattle
have come onto McCutchin property, he would notify the tenant, who would remove
them.  Additionally, McCutchin stated
that he knows that the Trust property is occasionally cultivated and when that
happens, all livestock are removed from Trust land and also from the disputed
acreage.  He does not, however, state
that the cattle were ever removed from the disputed acreage during the
statutory period.








Further, Cole stated that for
the last twenty-five years he has regularly and continuously seen cattle
belonging to his tenants on the disputed acreage, and that at all times since
his becoming familiar with the property, his family has used the disputed
acreage for ranching.  In contradiction
to Paddock=s claim that
every time the Trustee=s tenant=s cattle got onto the disputed property, Paddock requested their
removal and the Trust complied with that request, Cole=s affidavit states that McCutchins= tenant only notified Cole or his tenant of cattle on McCutchin
property when the cattle wandered onto the undisputed McCutchin
property.  He added that at such time,
the Trust=s tenant
would have the cattle removed from the undisputed McCutchin property and make
repairs to the fence separating the disputed acreage and the rest of the
McCutchin property as necessary.

Paddock also stated that at
no time since the fall of 1991 has any activity by the Coles or their tenants
constituted continuous or notorious use and occupation of the disputed
acreage.  This statement is directly
contradicted by Cole=s affidavit,
in which he stated that his family has, at all times since his becoming
familiar with the property, used the disputed acreage as Cole property for
ranching purposes.

We note the similarities
between the facts in this case and the facts in Perkins.




 
 
  
 In Perkins, the court held that
 the claimants had established adverse possession when the evidence showed
 that:
 
 
  
 Similarly, in this case, the evidence
 raises a genuine issue as to these facts:
 
 
 
 
  
 (1) the disputed tract had been
 constantly used for grazing;
 
 
  
 (1) the tract had been used by the
 Coles for grazing regularly and continuously and for ranching Aat all times@;
 
 
 
 
  
 (2) the disputed tract was contiguous
 to and fenced within the claimants= land, with both tracts operated as a unit;
 
 
  
 (2) the disputed tract was contiguous
 to and fenced within the claimants= land, with both tracts operated as a unit; and
 
 
 
 
  
 (3) the ranch managers of the claimants= predecessor-in-interest had Arebuilt and replaced water‑gapped portions of the fence,
 modified portions of the fence, and always maintained the fence on behalf of@ their predecessor; and
 
 
  
 (3) the Coles= tenant had repaired the fence as needed over the years, which
 included adding and replacing posts, and adding, stretching, and tying wire.
 
 
 
 
  
 (4) the general reputation in the
 community had always been that the disputed property was part of the
 claimants= land and
 that the fence was the boundary between the parties= land.
 
 
  
 (4) Neither party provided evidence as
 to what the reputation in the community is as to the owner of the property.
 
 











After considering the
evidence, we hold that the trial court did not err by denying the Trustees= summary judgment motion because the Trustees did not conclusively
establish every element of their claim. 
Specifically, they did not conclusively establish that the disputed
acreage was Adesignedly
enclosed@ or that they made actual and visible use of the disputed acreage
sufficient to put the McCutchins on notice of their adverse claim.  Because the Trustees did not conclusively
prove every element of adverse possession, the trial court correctly denied the
Trustees= motion.

The trial court did err,
however, by granting the McCutchins= motion for summary judgment. 
The McCutchins= summary
judgment evidence did not conclusively establish that the disputed acreage was
not Adesignedly enclosed@, that it was not used continuously by the Trustees or their tenants
for grazing or for other nongrazing purposes, and that, under the Butler
and Perkins reasoning, the Trust had not made actual and visible use of
the disputed acreage for the statutory period. 
We consequently hold that there is a genuine issue of fact with respect
to those issues.  We therefore hold that
the trial court erred by granting the McCutchins= summary judgment motion.

Conclusion








Because we hold that a
genuine issue of material fact remains as to whether the Trust has acquired
title to the disputed acreage by adverse possession, we hold that the trial
court erred by granting summary judgment. 
Accordingly, we reverse the trial court=s judgment and remand this case for a trial on the merits.

 

LEE
ANN DAUPHINOT

JUSTICE

 

PANEL A:   CAYCE, C.J.; DAUPHINOT and WALKER, JJ.

CAYCE, C.J. filed a dissenting opinion.

DELIVERED:  April 12, 2007











 
 
 
 
 
 
 




 

 

 

 

 

                                                                                                        

                                      COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-092-CV

 

 

SUSAN
MEAD, AMY COLE AND 

DON
COLE, TRUSTEES OF THE 

MT. COLE TRUST NO. 4                                                     APPELLANTS

 

                                                   V.

 

RMLC,
INC., RONALD L. McCUTCHIN 

FAMILY
PARTNERSHIP, LTD. A/K/A 

RONALD
McCUTCHIN FAMILY 

PARTNERSHIP, LTD.                                                             APPELLEES

 

                                              ------------

 

            FROM
THE 393RD DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                   DISSENTING
OPINION

 

                                              ------------








I respectfully dissent.  The Coles= claim to the disputed property is based on their contentions that the
Coles acquired the property through adverse possession because the disputed
acreage was designedly enclosed, it was used continuously by the Coles or their
tenants for grazing or nongrazing purposes, and the Coles made actual and
visible use of the property for the statutory period.  

It is well settled that when
a claimant relies on grazing to acquire limitation title, he must present
evidence that he Adesignedly
enclosed@ the land at issue.[1]  If a fence existed before the claimant took
possession of the land and the claimant fails to demonstrate the purpose for
which it was erected, then the fence is a Acasual fence.@[2]  Repairing or maintaining a casual fence, even
for the express purpose of keeping the claimant=s animals within the enclosed area, without a showing that the fence=s character was substantially modified, does not change a casual fence
into a designed enclosure.[3]








An exception to the designed
enclosure requirement has been recognized if the claimant can prove sufficient
nongrazing use of the land such that the true owner would have notice of the
hostile claim.[4]  Examples of such nongrazing use include
removing brush and trees from the property;[5]
farming, building corrals or watering ponds for cattle, or constructing other
buildings on the property;[6]
and cultivation of the land.[7]  Only when the nongrazing and grazing use of
the land is hostile and excludes all others, however, will a designed enclosure
showing be unnecessary.[8]








The summary judgment evidence
establishing the following facts is uncontroverted:

$                  
No Designed Enclosure.  The disputed property has never been enclosed
by a fence built by the Coles. (emphasis supplied)  An old dilapidated fence exists along the
northern boundary of the disputed property, but Ahas
been in disrepair for several decades.@  

 

$                  
No Substantial Modification of the
Northern Fence.  Cole=s
tenant=s
activities in connection with the old fence on the north side of the disputed
property have been limited to Areplacing and adding posts,
as well as adding, stretching, and tying wire.@

 

$                  
No Continuous, Actual, Visible Use.  The Coles have grazed cattle on the disputed
property from time to time,[9]
but neither the Coles nor their tenants have ever placed Aany
feeders, hay bales, corrals, pens, stalls, barns, or anything else on the
Disputed Acreage that would evidence an adverse claimant=s
presence,@ and
they have never planted crops on, cultivated, or harvested the disputed
property.

 








These facts conclusively
establish that the disputed property was not designedly enclosed by the Coles;
that the Coles never substantially modified the fence on the northern boundary
of the disputed property so as to change the fence=s character; that the disputed property was not used continuously by
the Coles, or their tenants, for any purpose such that the McCutchins had
notice of the hostile claim; and, that the Coles have not made actual and
visible use of the disputed property for the statutory period of ten years.[10] 
Consequently, I would hold that there is no genuine issue of fact with
respect to these issues and that the McCutchins are entitled to summary
judgment as a matter of law.  I would,
therefore, affirm the trial court=s judgment.

 

 

 

JOHN CAYCE

CHIEF JUSTICE

 

DELIVERED:  April 12, 2007

 











[1]Gulbenkian
v. Penn, 151 Tex. 412, 252 S.W.2d 929, 931 (1952).





[2]Gaines
v. Hamman, 163 Tex. 618, 626, 358 S.W.2d 557, 563 (1962); Mackey
v. U.P. Enterprises, Inc., 935 S.W.2d 446, 451-52 (Tex. App.CTyler
1996, no writ).





[3]Tex. R. Civ. P. 166a(c); Sw. Elec. Power
Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of Houston v.
Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).





[4]Sw.
Elec. Power Co., 73 S.W.3d at 215.





[5]Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).





[6]Great
Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391
S.W.2d 41, 47 (Tex. 1965).





[7]Clear
Creek Basin, 589 S.W.2d at 678.





[8]IHS
Cedars Treatment Ctr. of Desoto, Tex., Inc. v.
Mason, 143 S.W.3d 794, 798 (Tex. 2004).





[9]Centeq
Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995).





[10]Valence
Operating Co., 164 S.W.3d at 661.





[11]Id.





[12]Tex. R. App. P. 33.1.





[13]987
S.W.2d 607 (Tex. App.CForth
Worth 1999, pet. denied).





[14]Id. at
609.





[15]Id.





[16]Id. at
610.





[17]Id. at
611.





[18]73
S.W.3d 489 (Tex. App.CFort
Worth 2002, no pet.).





[19]Id. at
498.





[20]Id.





[21]See
id.





[22]See
id.





[23]See
id. at 499.





[24]Tex. Civ. Prac. & Rem. Code Ann. '
16.021(1) (Vernon 2002); see also 
Rhodes v. Cahill, 802 S.W.2d 643, 645 (Tex. 1990) (possession must
be actual, visible, continuous, notorious, distinct, and hostile).





[25]Tex. Civ. Prac. & Rem. Code Ann. '
16.026(a) (Vernon 2002).





[26]See
Garrett v. Bennett, 242 S.W.2d 221, 223 (Tex. Civ. App.BWaco
1951, no writ).





[27]Perkins
v. McGehee, 133 S.W.3d 287, 292 (Tex. App.CFort
Worth 2004, no pet.).





[28]153
Tex. 281, 267 S.W.2d 781, 786 (1954).





[29]See
id. at 785-86.





[30]Rhodes, 802
S.W.2d at 646.





[31]Id.





[32]Orsborn, 267
S.W.2d at 786 (quoting West Prod. Co. v. Kahanek, 132 Tex. 153, 121
S.W.2d 328, 331 (1938)).





[33]Perkins, 133
S.W.3d at 292 (quoting Rhodes, 802 S.W.2d at 646).





[34]Rhodes, 802
S.W.2d at 646.





[35]Perkins, 133
S.W.3d at 292.





[36]See
Butler v. Hanson, 455 S.W.2d 942, 945-46 (Tex. 1970); Perkins,
133 S.W.3d at 293.





[37]Butler, 455
S.W.2d at 946.





[38]See
Perkins, 133 S.W.3d at 292; Hoppe v. Sauter, 416 S.W.2d
912, 915 (Tex. Civ. App.CTexarkana
1967, writ ref=d
n.r.e.).





[39]Perkins, 133
S.W.3d at 292-93.





[40]Id. at
293.





[41]Id. at
292.





[1]See, e.g.,
McDonnold v. Weinacht, 465 S.W.2d 136, 141-42 (Tex. 1971) (citing Orsborn
v. Deep Rock Oil Corp., 153 Tex. 281, 267 S.W.2d 781, 785 (1954)); Perkins
v. McGehee, 133 S.W.3d 287, 292 (Tex. App.CFort
Worth 2004, no pet.).





[2]See
Rhodes v. Cahill, 802 S.W.2d 643, 646 (Tex. 1990); Orsborn,
153 Tex. 281, 267 S.W.2d at 786.





[3]See
Rhodes, 802 S.W.2d at 646; McDonnold, 465 S.W.2d at 141-42. 





[4]See
Perkins, 133 S.W.3d at 292.





[5]Id. 





[6]See
Trevino v. Trevino, 64 S.W.3d 166, 172 (Tex. App.CSan
Antonio 2001, no pet.).





[7]See
Butler v. De La Cruz, 812 S.W.2d 422, 425 (Tex. App.CSan
Antonio 1991, writ denied).  





[8]Cf.,
e.g., Butler v. Hanson, 455 S.W.2d 942, 945‑46 (Tex. 1970)
(holding that constant use for grazing on tracts which were contiguous and
operated as a unit, along with evidence of modifications to an existing fence
and a general reputation in the community that the property in question
belonged to the claimant, was sufficient evidence of adverse possession); Caver
v. Liverman, 143 Tex. 359, 185 S.W.2d 417, 419 (1945) (holding that the
connecting of a new fence to an existing fence, together with a combination of
grazing and woodcutting, is some evidence of adverse possession); Fish v.
Bannister, 759 S.W.2d 714, 720 (Tex. App.CSan
Antonio 1988, no writ) (holding that constant heavy grazing, periodic harvest
and sale of cedar, sale of two pipeline easements across disputed land, and the
lease of disputed land for hunting was sufficient evidence of other use of
grazed land to eliminate the need for proof of a designed enclosure).

 





[9]Cole states that he
has used the disputed property for the grazing of livestock and Aranching,@
however, Cole did not identify any ranching activities other than grazing of
cattle.   





[10]Compare
Rhodes, 802 S.W.2d at 645-46 (adverse possession is not established when
claimant paid taxes on disputed property, grazed cattle and goats on the
property, and occasionally repaired fence enclosing the property), with
Butler, 455 S.W.2d at 945-46 (adverse possession is established when the
disputed property was constantly used for grazing, tracts in question were
contiguous and operated as a unit, claimant made substantial modifications to
fence, and the general reputation in the community was that claimant owned
disputed property).















 [COMMENT1]

Majority LAD

Dissent JC