JOHN C. CAVER V. R. ·C. LIVERMAN ET AL.

No. A-237. Decided January 31, 1945.
Rehearing overruled February 28, 1945.
(185 S. W., 2d Series, 417.)

*Carney & Carney,* of Atlanta, for petitioner.

There being no evidence to show that Crawford exercised dominion or possession over the right of way to mature title by virtue of the statute of limitation, it was error for the court of civil appeal to affirm the judgment of the trial court investing title in him. Houk v. Kirby Petroleum Co., 65 S. W. (2d) 496; Hardy v. Bumpstead, 41 S. W. (2d) 226; Bracken v. Jones, 63 Texas 184; Surkey v. Qua, 173 S. W. (2d) 230.

*S. I. Cornett,* of Linden, and *B. F. Whitworth,* of Houston, for respondents.

PER CURIAM:

This is a suit in trespass to try title, brought by petitioner Caver against respondents, the land in controversy being a tract in Cass County 100 feet wide north and south and 4343 feet long, containing 9.99 acres, which many years ago was owned by the Jefferson Lumber Company and used by it as a right of way for its tram road. Its use for that purpose was abandoned about the year 1895. Petitioner proved a record title to the tract of land for which he sued. Respondents rely upon adverse possession, respondent Boyer claiming to have acquired title to the west 7.49 acres of the tract of land in controversy by possession and use and respondent Crawford claiming thus to have acquired the east 2.5 acres.

The jury, by answers to special issues, found in Boyer's favor the essential elements of the five, ten and twenty-five year statutes of limitation and in Crawford's favor the essential elements of the ten and twenty-five year statutes. The trial court's judgment that petitioner take nothing was affirmed by the Court of Civil Appeals. 180 S. W. (2d) 448.

The suit is in effect two separate suits, one between petitioner Caver and respondent Boyer for the 7.49 acre tract, and the other between petitioner Caver and respondent Crawford for the 2.5 acre tract, and the controversies as to the two tracts will be separately discussed.

The land in controversy is a part of the John Lick Headright Survey, which was divided into three parts, designated as the north, middle and south thirds. The south boundary of the tract of land 100 feet in width, formerly owned by the Jefferson Lumber Company, which is also the south boundary of the two

tracts in controversy herein, is along the south line of the middle third and the north line of the south third of the Lick survey. Respondent Boyer took possession of the 7.49 acre tract under a deed dated December 19, 1918, executed by his mother, Mrs. Cynthia E. Boyer, joined by his father, conveying to him, respondent E. Boyer, 208 acres of land more or less out of the middle third of the Lick survey and so described by metes and bound as to include within the boundaries of the tract conveyed by the deed the 7.49 acre tract, the south line of the 208 acre tract conveyed being described in the deed as coinciding with the south boundary line of the middle third and the north boundary line of the south third of the survey. The same 208 acre tract, with the same description, had been conveyed to Mrs. Cynthia E. Boyer on October 30, 1917, by J. W. Witt and wife, and Witt held a deed to the same tract from L. D. Young and wife which, like the two deeds last described and with the same description, included the 7.49 acre tract. Prior deeds in the chain of title, however, used the same description but excepted the right of way (and consequently the 7.49 acre tract) that had been deeded to the Jefferson Lumber Company.

The petition for writ of error attacks as contrary to the undispted evidence the jury's finding that Boyer held peaceable and adverse possession of the 7.49 acre tract, using or enjoying the same for a period of ten consecutive years prior to the filing of the suit. After careful examination of the statement of facts, we have reached the conclusion that there is evidence supporting this finding of the jury. The substance of some of the evidence will be stated briefly.

The deeds by which Witt, although he had no title to the 7.49 acre tract, conveyed the 208 acres to respondent Boyer's mother, and by which she conveyed the 208 acres to Boyer, included the 7.49 acre tract as a part of the land conveyed. Boyer and his father and mother immediately went into possession of the land and occupied it as their home. The land had been fenced before they acquired it and most of the 7.49 acres, the right of way, was within the enclosure. The fence on the south line of the enclosure followed in general the south line of the right of way, but apparently because of irregularities in the surface of the right of way the fence was not straight. There is evidence that in some places the fence was 12 to 20 feet north of the south line of the right of way and that at a few places it was as far as 60 feet from the line, so that small parts of the 7.49 acre tract, although included in the deed, were outside of the fence. Boyer has maintained the fences forming the enclosure at all times since the land was conveyed to him.

Boyer lived on the 208 acre tract and used it for farming ing and stock raising, making a crop on some portion of the land from 1918 until the fall of 1922. Thereafter his tenant occupied the land, cultivated portions of it, and used it for grazing livestock until 1943. There is evidence that from 1919 until the crop year 1943 a crop was made each year of some portion of the land described in the deed. During all of that time Boyer claimed ownership of the 208 acres described in the deed and regularly paid taxes on it.

Most of the 7.49 acres was unfit for farming on account of the dumps and cuts made for the tram road and because timber had overgrown a part of it. During two years a tenant farmed 200 or 300 yards of the 7.49 acres as far as the fence on the south but except for that none of the right of way was actually cultivated. There is evidence proving, or at least tending to prove, that each year, during a period or periods of ten consecutive years. Boyer and his tenants, after the crops were made, turned their livestock into the enclosure and thus regularly and consecutively during the fall and winter used the land within the enclosure for grazing, and there is positive testimony that the livestock went onto the old right of way and grazed there.

The evidence may be summarized as showing that the land here in controversy and claimed by Boyer was included within the description contained in the deed to Boyer; that he took possession under that deed, claiming as his own all of the land described in it; that the land conveyed to him was enclosed by fences so that the enclosure included, except for a few small portions of the right of way, all of the land described in the deed; and that Boyer and his tenant possessed and used the land for farming and grazing each year for a period or periods of more than ten consecutive years. This evidence supports the jury's finding of adverse possession and use of the 7.49 acres.

■ Petitioner invokes the rule of Turner v. Moore, 81 Texas 206, 16 S. W. 929, which was discussed in Simonds v. Stanolind Oil & Gas Co., 134 Texas 332, 336-338, 114 S. W. (2d) 226, making the contention that since part of the land described in Boyer's deed, that is the land immediately north of the 7.49 acres, was owned by one person and part, the 7.49 acres, by another person, Boyer's possession of the land to the north cannot be extended to the 7.49 acre tract. The rule of Turner v. Moore is not applicable, because, as has been said, there is evidence proving, or at least tending to prove, that Boyer and his tenants had actual possession of the greater part of the 7.49 acres.

Petitioner makes the further contention that Boyer acquired no title to the part or parts of the 7.49 acre tract lying outside of his enclosure, because there is no proof that he ever possessed or used that land. This contention cannot be sustained, because the deed under which Boyer claimed described as within its metes and bounds the whole of the 208 acres, including all of the 7.49 acres, and Boyer's possession of all of the land described in the deed, except the small part or parts of the 7.49 acre tract thereof lying south of the fence, gave him constructive possession of the land described in his deed and lying south of the fence, the true owner of the right of way not being in actual possession of any part of it. Cunningham v. Frandtzen, 26 Texas 34, 38; Evitts v. Roth, 61 Texas 81, 85; Bracken v. Jones, 63 Texas 184, 187; Porter v. Miller, 76 Texas 593, 14 S. W. 334; Id. 84 Texas 204, 19 S. W. 467; Marion County v. Sparks, 112 S. W. (2d) 798, 800; Moran v. Stanolind Oil & Gas Co., 127 S. W. (2d) 1012, 1016.

The facts as to respondent Crawford's possession and use of the 2.5-acre tract are to some extent different from the facts pertaining to Boyer's possession and use of the 7.49 acres. Neither the 2.5-acre tract nor any part of the right of way is within the boundaries of the land described in the deed to Crawford. His deed, which was executed in December, 1913, conveyed to him two tracts of land out of the John Lick survey, both described by metes and bounds, one containing 52-1/4 acres and the other containing 49-3/4 acres. The larger of the two tracts lies north of the smaller tract, which is immediately north of the right of way. The smaller tract is described in the deed as beginning at its northeast corner; "thence South 716 varas to the right of way of Jefferson Lumber Co.; thence West with said right of way 392 varas, a stake (describing bearing trees) ; thence North 716 varas * * *; thence East 392 varas to the place of beginning."

Almost all the evidence as to Crawford's possession is his own testimony, the substance of which follows. He has made his home on the 52-1/4-acre tract since January 13, 1914. When he acquired the land, Cy Perkins owned the land lying south of the Jefferson Lumber Company right of way and had a rail fence along his (Perkins') north line and the south line of the right of way. There was no fence along the north line of the right of way, but the north, east, and west lines of the 49-3/4-acre tract were fenced. The fences along the east and west lines of the tract did not extend as far south as the Perkins rail fence, and with Perkins' permission Crawford ran two barbed wires

from the south end of the fence on his west line and tied them to the Perkins rail fence, and in the same manner connected the south end of the fence on his east line to the rail fence. The fences thus placed and constructed in 1914 were maintained until 1925 or 1926. In this way the 2.5-acre tract was inclosed with the 49-3/4-acre tract.

■ Crawford testified that each year, from the spring of the year 1914 until sometime in 1925 or 1926, he cultivated some portion of the 49-3/4 acres and that in the fall and winter of each year, after the crops were .gathered, he turned his livestock into that tract; that the 2.5-acre tract was inclosed with the 49-3/4-acre tract; and that his cows grazed on the 2.5-acre tract. He further testified that he cut wood off the land. When asked whether or not he had cut wood off the land every year, he testified as follows: "A. I expect I have. I cut up across it and on it, and on both sides of it. I just haven't took notice every year, every year I lived there." "Q. Have you or not cut lots of your wood off that old right-of-way?" "A. I have, yes sir." He further testified that he looked after the land regularly to keep fires from destroying the timber.

The land was so rough that it was difficult for cattle to travel over it, and there was but little grass on part of it. Nevertheless, Crawford testified that his cattle grazed on the land and that he cut wood off it. This, we think, constituted some evidence of adverse possession of the land for the statutory period. McDow v. Rabb, 56 Texas 154; Moran v. Moseley, 164 S. W. 1093; 2 Tex. Jur. 91.

Since there was some evidence to support the verdict of the jury, and the Court of Civil Appeals found the evidence sufficient to support the verdict, this Court is bound thereby. Crawford therefore sustained his defense of limitation to the 2.5-acre tract.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered January 31, 1945.

Rehearing overruled February 28, 1945.