### GARRETT v. BENNETT.

No. 2976.

Court of Civil Appeals of Texas. Waco.

July 19, 1951.

Rehearing Denied Sept. 20, 1951.

Owen F. Watkins, Mexia, for appellant.

Bradley & Geren, Groesbeck, for appellee.

LESTER, Chief Justice.

Plaintiff brought suit against the defendant to recover title and possession of a strip of land in Block 4, Subdivision "G" of the City of Mexia, Texas, its dimensions being 17½ feet fronting on Titus Street and extending back 75 feet. Plaintiff claimed title under a deed from the City of Mexia. The defendant claimed title under the ten years statute of limitation. Vernon's Ann.Civ.St. art. 5510. She testified that she had had it enclosed in part by fence since 1932 and the remainder enclosed by shrubbery and flowers since 1933. The trial was before the court without the aid of a jury, and resulted in a judgment for the plaintiff. The trial court did not file findings of fact and conclusions of law and the record does not reveal any request therefor.

The record reveals that the defendant came into possession of her property, which was east of and adjacent to the property in dispute, by deed in 1931, and she testified that she moved into the house situated

thereon in 1932. The 17½ feet, which is a part of the 70 x 75 feet conveyed by the City of Mexia to the plaintiff, was, from 1925 to 1937, owned by T. J. Preston. The residence situated thereon burned prior to the time the defendant came into possession of her property. On October 20, 1937, a judgment for taxes was recovered against the Preston lot and an order of sale ordered issued. The sheriff sold the property to the City of Mexia and in March 1943 the City sold the property to the plaintiff, who was at that time in the military service. The deed was lost before being filed for record and on June 13, 1950, the City executed another deed in substitution of the lost deed executed in March 1943.

Defendant's first point is: "Where fences had been constructed and hedges planted, and flower beds cultivated on a marked line between property owners, believed to be the true line between their lands, and the adjoining owners acquiesced in the line so established for more than eighteen years, title to the strip of land on one side of fence vested in the owner of the land on that side of the fence under the ten years statute of limitation." Defendant further contends that she used, occupied and cultivated, under enclosure, for the only purpose for which it was adapted in good faith for more than ten years, and that the record as a whole shows that she was entitled to judgment under the ten years statute of limitation.

Article 5515, Vernon's Ann.Civ.Stats., defines "adverse possession" as follows: "'Adverse possession' is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another."

The defendant was the only witness who testified in her behalf and she testified that when she moved on her lot in February 1932, which was subsequent to the time the house burned on the Preston lot, that there was visible on the ground traces of ashes that appeared to her to be where a fence, consisting of two panels, had burned, and that she rebuilt the fence in 1932 on the rear of the property, which ran toward Titus Street; that in 1932 she planted some shrubbery on the line parallel with the fence for some distance; then in 1933 she had a flower bed in a line with the fence toward Titus Street but said bed did not extend to Titus Street, said flower bed being on the 17½ feet now in dispute; that she maintained her flower bed and shrubs thereon from that time up until the time the case was tried; at all times claiming and believing it to be her property.

■ Where a case is tried before the court without the aid of a jury and the record does not contain findings of fact and conclusions of law, if there is sufficient evidence in the record, with all reasonable conclusions to be drawn therefrom, to support the trial court's judgment, his judgment is binding upon this court. This principle is so well settled that it is unnecessary to cite authorities in support thereof.

The record further reveals that the defendant conveyed the property described in her deed to her son and daughter. This deed was dated April 22, 1935. The daughter executed a quitclaim deed to Mrs. Garrett dated May 7, 1941, conveying all of her interest in the property conveyed by Mrs. Garrett to her. The son conveyed his undivided one-half interest back to her in 1945, but Mrs. Garrett testified that she was in possession of said property all of the time from the time it was conveyed to her in 1931 up to the date of the trial, living therein up to September 1940, and receiving and collecting the rent during the five years she was away. She moved away from said property in 1940 and lived in another county for some five years, and in this connection she testified as follows:

"Q. Now, during that five years, Mrs. Garrett, part of that time I believe you were sick, were you not? A. Yes, I was sick in Marlin.

"Q. And you were not able to come back and see about your property? A. Not all of the time, no.

"Q. You did not know who had your property? A. No, for a period of time I didn't look after it.

"Q. And you did have some tenants— some tenants moved in and you didn't know of it? A. Something like that."

She testified that during part of the time she was away her agent, Mr. Compton, rented her property for her. None of the rental contracts were introduced in evidence nor were the provisions of any of said contracts testified to in order to prove whether or not the 17½ feet in dispute was included therein. The record does not reveal that any tenant claimed possession of the disputed strip for her or that any one of them ever occupied or used it in any manner. She also introduced in evidence three pictures of her yard and flower garden as Exhibits Nos. 2, 3 and 4. She testified that these pictures were made in 1938 or 1939, that she had kept them and was rather proud of them. Each of these pictures have stamped on the back: "This is a Kodacolor Print made by Eastman Kodak Company." Exhibit No. 2 bears the date: "Week of December 12, 1949", No. 3, "Week of November 21, 1949" and No. 4, "Week of December 12, 1949." Mrs. Garrett testified that her flower bed did not extend up to Titus Street when she left in 1940 but after she returned in 1945 she replanted her flowers and extended her flower garden on the property in dispute up to the sidewalk on Titus Street. Exhibit No. 2 shows her flower bed extending to the edge of said walk.

The plaintiff had for a number of years owned his home on Canton Street, which is in the same block in which the property in dispute is located. He built his home in 1936 and 1937. He testified that Mrs. Garrett was not living in her home at the time he built his home and testified that there was no flower bed on the 17½ feet when he bought his property. Mrs. Garrett testified that she got permission in 1932 from Mr. Mace, the City Manager, to clean off and use the Preston lot for a cow lot and garden spot. Mr. Mace testified that Mrs. Garrett asked permission to use the lot and he told her she could use it; that this request of Mrs. Garrett was made during the time the City owned the lot, which was subsequent to October 1937. The plaintiff further testified that in 1946

Mrs. Garrett tried to buy his property and this was not explained or denied by her. In July 1950 Mrs. Garrett had a cyclone fence constructed, enclosing the 17½ x 70 feet. The rear of this tract joined the Eubanks tract, and in connection with the ashes of the burned fence that she said she found when she moved onto her property in 1932, on cross-examination she testified:

"Q. You are not telling the court there was an old fence on Mr. Bennett's part of it toward Titus Street when you moved there in 1932, are you? A. The fence, the debris extended up on the lot quite a little piece. I wouldn't say whether it was over the part Mr. Eubanks owns now or on the part Mr. Bennett owns.

"Q. In taking your deposition we asked you this question: 'Q. But there wasn't a fence on the part Mr. Bennett now claims?' and your answer was, 'No, there wasn't a fence on the part Mr. Bennett now claims', there was no fence where you constructed the cyclone fence on Mr. Bennett's part of the property? A. No, there was no fence there."

Appellant cites several cases in support of her contentions. We have read all of them but are of the opinion that none of them are in point. Mrs. Garrett was an interested witness and under the evidence heretofore set out the court was not bound to accept her evidence and disregard all other facts in the case. The burden of proof was upon her to establish by a preponderance of the evidence that she had cultivated, used or enjoyed the same for a period of ten years in such a manner as to constitute adverse possession. She had not perfected her title by limitation at the time she moved away in 1940 and remained for a period of five years. If she did not exercise that character of possession during that time as the law requires, the fact that when she returned in 1945 she began to use and enjoy the tract would not mature her title under the ten years statute. It was the duty of the trial judge to pass upon the evidence, and having done so, his judgment is binding upon this court.

The judgment is affirmed.