Susan MEAD, Amy Cole, and Don Cole Trustees of the MT Cole Trust No. 4, Appellants,

v.

RLMC, INC., Ronald L. McCutchin Family Partnership, Ltd. a/k/a Ronald McCutchin Family Partnership, Ltd., Appellees.

No. 2–06–092–CV.

Court of Appeals of Texas, Fort Worth.

April 12, 2007.

Rehearing and Rehearing En Banc Overruled June 7, 2007.

R. William Wood, C. Jane Thacker, Sherry L. Shipman, Wood, Thacker & Weatherly PC, Denton, for appellants.

Talmage Boston, J. Brian Vanderwoude, Winstead Sechrest & Minick P.C., Dallas, for appellees.

Panel A: CAYCE, C.J.; DAUPHINOT and WALKER, JJ.

## OPINION

LEE ANN DAUPHINOT, Justice.

Appellants Susan Mead, Amy Cole, and Don Cole, trustees of the MT Cole Trust No. 4, ("Trustees") appeal the trial court's denial of their motion for summary judgment and grant of summary judgment in favor of Appellees RLMC, Inc. and Ronald L. McCutchin Family Partnership, Ltd. (collectively "the McCutchins"). In two issues on appeal, the Trustees argue that (1) the trial court did not implicitly rule on the McCutchins' objections to the Trustees' summary judgment evidence, but rather expressly did not rule on the objections, and therefore all of the Trustees' evidence should be considered by this court on appeal; and (2) the trial court erred by granting summary judgment to the McCutchins on the issue of adverse possession and by denying the Trustees' motion for summary judgment on the same issue. Because we hold that the trial court did not impliedly rule on the McCutchins' objections and that a genuine issue of material fact exists, we reverse the trial court's judgment.

### FACTS AND PROCEDURAL HISTORY

The MT Cole Trust No. 4 owns several thousand acres in Denton County, Texas. In 1981, Ronald Lee McCutchin bought a tract of land (the "McCutchin property") bordering the Trust's property to the north, and in 1998, McCutchin conveyed the property to Appellee Ronald McCutchin Family Partnership, Ltd. Appellee RLMC, Inc. is the general partner of that partnership.

In 2001, RLMC, acting as the general partner of the partnership, entered into an oil and gas lease with Western Chief Oil and Gas Co., and in 2003, Western drilled two wells on property covered by the lease. The acreage on which the wells are located was separated by a fence line from what is undisputedly McCutchin property. This fence has significance to the Trustees' arguments.

The Trustees brought suit against the McCutchins on a claim of trespass to try title and sought declaratory judgment, claiming title to the property on which the wells were drilled. The Trustees contend that the Trust has acquired title to the property by adverse possession, specifically the land north of what is undisputedly Trust property and south of the fence line and what is undisputedly McCutchin property (the "disputed acreage").

The Trustees alleged in their First Amended Petition and in their motion for summary judgment that, for at least ten years, they have leased the disputed acreage to tenants who have used the land to graze cattle, that the tenants have maintained and worked on the fence separating the disputed acreage from the McCutchin property to prevent cattle from escaping, and that cattle owned by the Trust's tenants have continuously grazed on the property immediately south of the fence from before 1950 to the present. They further claimed that although a fence has separated the disputed acreage from the McCutchin property, no fence separated the disputed acreage from the Trust's property until McCutchin had one built during the pendency of this lawsuit. They also claim that the Trust's property and the disputed acreage form one contiguous unit.

In their own motion for summary judgment, the McCutchins claimed that the disputed acreage has never been enclosed and that any grazing by the livestock of the Trust's tenants has been sporadic. The trial court granted the McCutchins' summary judgment motion, and the Trustees appealed.

## STANDARD OF REVIEW

The function of summary judgment practice is to eliminate patently unmeritorious claims and untenable defenses.[1] The purpose of the summary judgment rule is to "provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that there is no genuine issue of fact."[2] In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[3] The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.[4]

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[5] Evidence that favors the movant's position will not be considered unless it is uncontroverted.[6]

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law.[7] A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.[8] Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant.[9]

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented.[10] The reviewing court should render the judgment that the trial court should have rendered.[11]

## ANALYSIS

■ We first consider whether the trial court implicitly ruled on the McCutchins' objections to the Trustees' summary judgment evidence. A trial court's ruling on an objection can be either express or implied.[12] The McCutchins argue that we should apply *Frazier v. Yu*[13] and hold that

1. *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 931 (1952).

2. *Gaines v. Hamman*, 163 Tex. 618, 626, 358 S.W.2d 557, 563 (1962); *Mackey v. U.P. Enterprises, Inc.*, 935 S.W.2d 446, 451–52 (Tex. App.-Tyler 1996, no writ).

3. TEX.R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979).

4. *Sw. Elec. Power Co.*, 73 S.W.3d at 215.

5. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005).

6. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965).

7. *Clear Creek Basin*, 589 S.W.2d at 678.

8. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004).

9. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995).

10. *Valence Operating Co.*, 164 S.W.3d at 661.

11. *Id.*

12. TEX.R.APP. P. 33.1.

13. 987 S.W.2d 607 (Tex.App.-Forth Worth 1999, pet. denied).

the trial court impliedly ruled in favor of their objections to the Trustees' summary judgment evidence. In *Frazier*, the defendant objected that the plaintiff's summary judgment evidence was not competent evidence and moved to strike the plaintiff's affidavits.[14] The trial court granted the motion and entered a summary judgment for the defendant; on its docket sheet, the court indicated that the plaintiff had not submitted any summary judgment evidence.[15] The trial court's order granting summary judgment stated that it had reviewed all "competent" evidence.[16] We held that this record showed that the trial court had implicitly ruled on the objections.[17]

The Trustees, on the other hand, argue that we should apply *Wrenn v. GATX Logistics, Inc.*[18] and hold that the trial court did not impliedly rule on Appellees' objections. In *Wrenn*, GATX argued that the trial court impliedly sustained their objections to Wrenn's summary judgment evidence. We distinguished *Frazier* because nothing in the record in *Wrenn* demonstrated that the trial court had implicitly sustained GATX's objections, whereas the record in *Frazier* supported such an inference.[19] We noted that "[w]hen we cannot determine what implied ruling is to be inferred, we cannot expect the parties to be able to do so."[20]

■ In this case, unlike in *Frazier*, the record does not demonstrate that the trial court impliedly ruled on the McCutchins' objections. Here, the trial court first signed a judgment granting the McCutchins' summary judgment motion and their objections to the Trustees' summary judgment evidence. The Trustees' objected that they had not been notified that the trial court had made a ruling on the objections and that under Rule 166a they had the right to amend and cure any alleged defects. The trial court then rescinded its judgment. The McCutchins next submitted to the court a proposed order granting the objections. The court did not sign it but instead signed a judgment that did not contain a ruling on the objections.

As in *Wrenn*, the mere fact that the trial court granted the McCutchins' summary judgment motion does not provide grounds for us to infer that the trial court necessarily sustained the objections.[21] It is just as possible that the trial court considered the Trustees' summary judgment evidence and concluded that the evidence did not raise a genuine issue of material fact,[22] particularly in light of the trial court's rescinding the original judgment sustaining the objections, not signing the proposed ruling granting the objections, and entering of a final judgment that does not mention the objections. We therefore hold that we may consider the Trustees' summary judgment evidence in our review.[23]

■ We next consider whether the trial court erred by granting the McCutchins' motion for summary judgment and by denying the Trustees' motion. A claimant seeking to establish adverse possession of a tract of land must show actual and visi-

---

14. *Id.* at 609.

15. *Id.*

16. *Id.* at 610.

17. *Id.* at 611.

18. 73 S.W.3d 489 (Tex.App.-Fort Worth 2002, no pet.).

19. *Id.* at 498.

20. *Id.*

21. *See id.*

22. *See id.*

23. *See id.* at 499.

ble appropriation of the tract, "commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." [24] A claimant asserting adverse possession under the ten-year limitation statute must additionally show cultivation, use, or enjoyment of the property "in peaceable and adverse possession" for the statutory period.[25] The claimant must show such cultivation, use, or enjoyment by a preponderance of the evidence.[26]

 A claimant may use grazing of cattle or other animals to establish adverse possession of a tract of land; however, such a claimant must generally show that the claimant "designedly enclosed" the disputed tract.[27] In their summary judgment motion, the McCutchins cited *Orsborn v. Deep Rock Oil Co.* for the proposition that to satisfy the continuous, open, obvious, and notorious elements of adverse possession, Texas law requires more than occasional grazing on property unless the property is enclosed by a "solid fence." [28] The McCutchins are correct that when a claimant maintains that grazing of cattle on the land gave the true owner the requisite notice of the claimant's adverse claim, the disputed tract must be enclosed by more than a casual fence.[29] We disagree, however, that Texas law requires a claimant to enclose claimed land with a "solid fence."

 Under the case law, fences are either "casual fences" or "designed enclosures." [30] A fence is a "casual fence" if it existed before the party claiming adverse possession took possession of the land and the claimant does not demonstrate the purpose for which the fence was built.[31] In their brief, the McCutchins' incorrectly state that the Trustees could not have adversely possessed the disputed acreage unless the tract was enclosed by a fence built by the Coles. The McCutchins are correct that, for adverse possession purposes, a casual enclosure built by a third party (neither the true owner nor the claimant) for that party's own purpose "has no more effect than if same had never come into existence." [32] Further, a casual fence cannot be changed to a designed enclosure through mere repair or maintenance, even if such repairs or maintenance were done "for the express purpose of keeping the claimant's animals within the enclosed area." [33] But a claimant may nevertheless support an adverse possession claim with evidence of such a fence if the claimant shows that, through substantial modification of the fence, the claimant has so changed the fence's character "that it bec[ame] a designed enclosure." [34]

 Additionally, proof of a "designed enclosure" is not required in every case.

**24.** TEX. CIV. PRAC. & REM.CODE ANN. § 16.021(1) (Vernon 2002); *see also Rhodes v. Cahill,* 802 S.W.2d 643, 645 (Tex.1990) (possession must be actual, visible, continuous, notorious, distinct, and hostile).

**25.** TEX. CIV. PRAC. & REM.CODE ANN. § 16.026(a) (Vernon 2002).

**26.** *See Garrett v. Bennett,* 242 S.W.2d 221, 223 (Tex.Civ.App.-Waco 1951, no writ).

**27.** *Perkins v. McGehee,* 133 S.W.3d 287, 292 (Tex.App.-Fort Worth 2004, no pet.).

**28.** 153 Tex. 281, 267 S.W.2d 781, 786 (1954).

**29.** *See id.* at 785–86.

**30.** *Rhodes,* 802 S.W.2d at 646.

**31.** *Id.*

**32.** *Orsborn,* 267 S.W.2d at 786 (quoting *West Prod. Co. v. Kahanek,* 132 Tex. 153, 121 S.W.2d 328, 331 (1938)).

**33.** *Perkins,* 133 S.W.3d at 292 (quoting *Rhodes,* 802 S.W.2d at 646).

**34.** *Rhodes,* 802 S.W.2d at 646.

An exception to the requirement of a "designed enclosure" applies when the claimant proves sufficient non-grazing use of the disputed land "such that the true owner would have notice of the hostile claim."[35] The Texas Supreme Court and this court have further held that in some instances, a claimant using the disputed land for grazing may establish title to the land through adverse possession even when the land at issue has not been designedly enclosed.[36] In *Butler v. Hanson*, the Texas Supreme Court did not require evidence of a "designed enclosure" and distinguished *Orsborn* based on the following facts: (1) in *Orsborn*, cattle only occasionally grazed on the disputed land, whereas in *Butler*, there was testimony that the disputed land was constantly used for grazing; (2) in *Orsborn*, the State of Texas owned land between the land owned by the claimant and the land the claimant sought to acquire by adverse possession, such that the claimant had to "skip an unfenced tract" to claim the land, whereas in *Butler*, the tracts in question were contiguous and operated as a unit; (3) the claimant in *Orsborn* merely made use of a fence built by another, but in *Butler*, the claimant made modifications to the fence that the court found to be evidence that he had made it his fence; and finally, (4) in *Butler*, evidence at trial established that the general reputation in the community was that the property bound by the fence was the claimant's property.[37] The facts in *Butler*, taken together, evidenced actual and visible use of the disputed land by the claimant.[38]

In *Perkins*, this court applied the same factors to find that although the claimants had not "designedly enclosed" the disputed tract, the claimants had by their actions acquired title to the tract through adverse possession.[39] In that case, we held that the evidence established that (1) the disputed tract had been constantly used for grazing; (2) the disputed tract was contiguous to and fenced within the claimants' land, with both tracts operated as a unit; (3) the ranch managers of the claimants' predecessor-in-interest had "rebuilt and replaced water-gapped portions of the fence, modified portions of the fence, and always maintained the fence on behalf of" their predecessor; and (4) the general reputation in the community had always been that the disputed property was part of the claimants' land and that the fence was the boundary between the parties' land.[40] We said that this evidence was sufficient evidence of "actual and visible use of the property in dispute."[41]

In summary, to be entitled to summary judgment, the Trustees had to conclusively establish, in addition to usual adverse possession elements, that they had "designedly enclosed" the disputed acreage, or that they had made sufficient nongrazing use of the disputed acreage such that the McCutchins would have had notice of the Trustees' hostile claim. This notice requirement cannot be established by grazing alone but can be established by a combination of grazing and other nongrazing activities, so long as, applying the reasoning of *Butler* and *Perkins*, the

---

**35.** *Perkins,* 133 S.W.3d at 292.

**36.** *See Butler v. Hanson,* 455 S.W.2d 942, 945–46 (Tex.1970); *Perkins,* 133 S.W.3d at 293.

**37.** *Butler,* 455 S.W.2d at 946.

**38.** *See Perkins,* 133 S.W.3d at 292; *Hoppe v. Sauter,* 416 S.W.2d 912, 915 (Tex.Civ.App.-Texarkana 1967, writ ref'd n.r.e.).

**39.** *Perkins,* 133 S.W.3d at 292–93.

**40.** *Id.* at 293.

**41.** *Id.* at 292.

Trust's actions constituted actual and visible use by the Trust of the disputed acreage. The McCutchins had to conclusively establish the opposite of each of these propositions, namely, that the Trustees did not "designedly enclose" the disputed acreage, and that, under the reasoning of *Butler* and *Perkins,* the Trustees' actions were insufficient to establish actual and visible use of the disputed acreage.

To determine all the questions presented, we will review the summary judgment evidence presented by the parties. We will discuss the evidence as it relates to the requirements of sufficient use of the property and enclosure.

### Evidence Regarding the Enclosure Requirement

In his affidavit, Ronald McCutchin stated that the disputed acreage is not enclosed and has never been enclosed. Cole's affidavit disputes this statement, despite McCutchin's claim that the statement is uncontroverted. McCutchin himself stated that a fence line existed between the disputed acreage and the rest of the McCutchin property, though he claimed the fence has been in disrepair for several decades, allowing cattle grazing on the disputed acreage to wander onto the rest of the McCutchin property from time to time.

And Cole's affidavit contradicts McCutchin's claims, stating that Cole knows from personal knowledge that at least from 1980 there has been a fence, made of wooden posts, steel posts, and barbed wire, separating the disputed acreage and the rest of the McCutchin property and running continuously from the east property line to the west property line, and that when cattle have wandered onto the rest of the McCutchin property, the Trustees' tenant returned the cattle to the disputed acreage/Trust property and made repairs to the fence as needed. Cole also said that the disputed acreage has at all times for at least the last twenty-five years been enclosed with the rest of the Trust property. Thus Cole's affidavit directly controverts McCutchin's assertions.

McCutchin stated that the Coles never worked on the fence separating the disputed acreage from the rest of the McCutchin property until after the wells were drilled, which Cole's affidavit disputes, and McCutchin's tenant Don Paddock stated that the fence had not been worked on by the Coles between 1991 and when the wells were drilled. Cole controverts these assertions in his affidavit. Cole stated that whenever his tenant's cattle strayed onto the undisputed McCutchin property, his tenant made any needed repairs to the fence, and Paddack admitted that the cattle had occasionally managed to stray onto the McCutchin property since he became McCutchin's tenant in 1991, controverting Paddack's and McCutchin's statement that no work was done on the fence until after the wells were drilled. Cole stated that the repairs made included adding and replacing posts, and adding, stretching, and tying wire, and he also stated that he himself has regularly checked on the fence over the years.

### Evidence Regarding Sufficient Use of the Property

McCutchin stated that from time to time, his tenants have grazed cattle on the disputed acreage. Don Cole stated in his affidavit that to his knowledge, no cattle owned by McCutchin or his tenants have grazed on the disputed acreage. Paddock established that he began leasing McCutchin property (not the disputed acreage) in 1991 and that he uses the leased land for farming, and the McCutchins presented no other evidence to the trial court establishing that the McCutchins or Paddock used the disputed acreage for

grazing or any other purpose during the statutory period.

McCutchin stated that he has been on the disputed acreage several times a year from the time he was a small boy and he knows that there has never been a time when the Coles or any of their tenants continuously occupied the disputed acreage. He stated that he has never seen the Coles or their tenants place any feeders, hay bales, or anything else on the disputed acreage that would evidence an adverse claimant's presence. McCutchin also stated that the Coles and their tenants only ever used the disputed acreage when their cattle would, from time to time, wander onto the property, and that the cattle would then return to what is undisputedly Trust land. McCutchin thus admits that the Trustees' cattle have at least occasionally grazed on the disputed acreage. The McCutchin affidavit claims that the disputed property has never been used for non-grazing activities, but the Cole affidavit states that the disputed property has been used for grazing and for "ranching activities." In his affidavit, Paddock stated that he has observed cattle crossing onto the disputed acreage and sometimes the rest of the McCutchin property because the fence line located at the boundary (presumably the boundary between the disputed acreage and the undisputed McCutchin property, though he does not specify) was insufficient to turn cattle. He further stated that when the Trustees' tenant's cattle have come onto McCutchin property, he would notify the tenant, who would remove them. Additionally, McCutchin stated that he knows that the Trust property is occasionally cultivated and when that happens, all livestock are removed from Trust land and also from the disputed acreage. He does not, however, state that the cattle were ever removed from the disputed acreage during the statutory period.

Further, Cole stated that for the last twenty-five years he has regularly and continuously seen cattle belonging to his tenants on the disputed acreage, and that at all times since his becoming familiar with the property, his family has used the disputed acreage for ranching. In contradiction to Paddock's claim that every time the Trustee's tenant's cattle got onto the disputed property, Paddock requested their removal and the Trust complied with that request, Cole's affidavit states that McCutchins' tenant only notified Cole or his tenant of cattle on McCutchin property when the cattle wandered onto the *undisputed* McCutchin property. He added that at such time, the Trust's tenant would have the cattle removed from the undisputed McCutchin property and make repairs to the fence separating the disputed acreage and the rest of the McCutchin property as necessary.

Paddock also stated that at no time since the fall of 1991 has any activity by the Coles or their tenants constituted continuous or notorious use and occupation of the disputed acreage. This statement is directly contradicted by Cole's affidavit, in which he stated that his family has, at all times since his becoming familiar with the property, used the disputed acreage as Cole property for ranching purposes.

■■■ We note the similarities between the facts in this case and the facts in *Perkins*.

| In Perkins, the court held that the claimants had established adverse possession when the evidence showed that: | Similarly, in this case, the evidence raises a genuine issue as to these facts: |
| --- | --- |
| (1) the disputed tract had been constantly used for grazing; | (1) the tract had been used by the Coles for grazing regularly and continuously and for ranching "at all times"; |

| | |
|---|---|
| (2) the disputed tract was contiguous to and fenced within the claimants' land, with both tracts operated as a unit; | (2) the disputed tract was contiguous to and fenced within the claimants' land, with both tracts operated as a unit; and |
| (3) the ranch managers of the claimants' predecessor-in-interest had "rebuilt and replaced water-gapped portions of the fence, modified portions of the fence, and always maintained the fence on behalf of" their predecessor; and | (3) the Coles' tenant had repaired the fence as needed over the years, which included adding and replacing posts, and adding, stretching, and tying wire. |
| (4) the general reputation in the community had always been that the disputed property was part of the claimants' land and that the fence was the boundary between the parties' land. | (4) Neither party provided evidence as to what the reputation in the community is as to the owner of the property. |

After considering the evidence, we hold that the trial court did not err by denying the Trustees' summary judgment motion because the Trustees did not conclusively establish every element of their claim. Specifically, they did not conclusively establish that the disputed acreage was "designedly enclosed" or that they made actual and visible use of the disputed acreage sufficient to put the McCutchins on notice of their adverse claim. Because the Trustees did not conclusively prove every element of adverse possession, the trial court correctly denied the Trustees' motion.

The trial court did err, however, by granting the McCutchins' motion for summary judgment. The McCutchins' summary judgment evidence did not conclusively establish that the disputed acreage was not "designedly enclosed", that it was not used continuously by the Trustees or their tenants for grazing or for other non-grazing purposes, and that, under the *Butler* and *Perkins* reasoning, the Trust had not made actual and visible use of the disputed acreage for the statutory period. We consequently hold that there is a genuine issue of fact with respect to those issues. We therefore hold that the trial court erred by granting the McCutchins' summary judgment motion.

### CONCLUSION

Because we hold that a genuine issue of material fact remains as to whether the Trust has acquired title to the disputed acreage by adverse possession, we hold that the trial court erred by granting summary judgment. Accordingly, we reverse the trial court's judgment and remand this case for a trial on the merits.

CAYCE, C.J. filed a dissenting opinion.

JOHN CAYCE, Chief Justice, dissenting.

I respectfully dissent. The Coles' claim to the disputed property is based on their contentions that the Coles acquired the property through adverse possession because the disputed acreage was designedly enclosed, it was used continuously by the Coles or their tenants for grazing or non-grazing purposes, and the Coles made actual and visible use of the property for the statutory period.

It is well settled that when a claimant relies on grazing to acquire limitation title, he must present evidence that he "designedly enclosed" the land at issue.[1] If a fence existed before the claimant took possession of the land and the claimant fails to

1. *See, e.g., McDonnold v. Weinacht*, 465 S.W.2d 136, 141–42 (Tex.1971) (citing *Orsborn v. Deep Rock Oil Corp.*, 153 Tex. 281, 267 S.W.2d 781, 785 (1954)); *Perkins v. McGehee*, 133 S.W.3d 287, 292 (Tex.App.-Fort Worth 2004, no pet.).

demonstrate the purpose for which it was erected, then the fence is a "casual fence."[2] Repairing or maintaining a casual fence, even for the express purpose of keeping the claimant's animals within the enclosed area, without a showing that the fence's character was substantially modified, does not change a casual fence into a designed enclosure.[3]

An exception to the designed enclosure requirement has been recognized if the claimant can prove sufficient nongrazing use of the land such that the true owner would have notice of the hostile claim.[4] Examples of such nongrazing use include removing brush and trees from the property;[5] farming, building corrals or watering ponds for cattle, or constructing other buildings on the property;[6] and cultivation of the land.[7] Only when the nongrazing and grazing use of the land is hostile and excludes all others, however, will a designed enclosure showing be unnecessary.[8]

The summary judgment evidence establishing the following facts is uncontroverted:

- **No Designed Enclosure.** The disputed property has never been enclosed by a fence *built by the Coles*. (emphasis supplied) An old dilapidated fence exists along the northern boundary of the disputed property, but "has been in disrepair for several decades."

- **No Substantial Modification of the Northern Fence.** Cole's tenant's activities in connection with the old fence on the north side of the disputed property have been limited to "replacing and adding posts, as well as adding, stretching, and tying wire."

- **No Continuous, Actual, Visible Use.** The Coles have grazed cattle on the disputed property from time to time,[9] but neither the Coles nor their tenants have ever placed "any feeders, hay bales, corrals, pens, stalls, barns, or anything else on the Disputed Acreage that would evidence an adverse claimant's presence," and they have never planted crops on, cultivated, or harvested the disputed property.

2. *See Rhodes v. Cahill,* 802 S.W.2d 643, 646 (Tex.1990); *Orsborn,* 153 Tex. 281, 267 S.W.2d at 786.

3. *See Rhodes,* 802 S.W.2d at 646; *McDonnold,* 465 S.W.2d at 141–42.

4. *See Perkins,* 133 S.W.3d at 292.

5. *Id.*

6. *See Trevino v. Trevino,* 64 S.W.3d 166, 172 (Tex.App.-San Antonio 2001, no pet.).

7. *See Butler v. De La Cruz,* 812 S.W.2d 422, 425 (Tex.App.-San Antonio 1991, writ denied).

8. *Cf., e.g., Butler v. Hanson,* 455 S.W.2d 942, 945–46 (Tex.1970) (holding that constant use for grazing on tracts which were contiguous and operated as a unit, along with evidence of modifications to an existing fence and a general reputation in the community that the property in question belonged to the claimant, was sufficient evidence of adverse possession); *Caver v. Liverman,* 143 Tex. 359, 185 S.W.2d 417, 419 (1945) (holding that the connecting of a new fence to an existing fence, together with a combination of grazing and woodcutting, is some evidence of adverse possession); *Fish v. Bannister,* 759 S.W.2d 714, 720 (Tex.App.-San Antonio 1988, no writ) (holding that constant heavy grazing, periodic harvest and sale of cedar, sale of two pipeline easements across disputed land, and the lease of disputed land for hunting was sufficient evidence of other use of grazed land to eliminate the need for proof of a designed enclosure).

9. Cole states that he has used the disputed property for the grazing of livestock and "ranching," however, Cole did not identify any ranching activities other than grazing of cattle.

These facts conclusively establish that the disputed property was not designedly enclosed by the Coles; that the Coles never substantially modified the fence on the northern boundary of the disputed property so as to change the fence's character; that the disputed property was not used continuously by the Coles, or their tenants, for any purpose such that the McCutchins had notice of the hostile claim; and, that the Coles have not made actual and visible use of the disputed property for the statutory period of ten years.[10] Consequently, I would hold that there is no genuine issue of fact with respect to these issues and that the McCutchins are entitled to summary judgment as a matter of law. I would, therefore, affirm the trial court's judgment.

---

10. *Compare Rhodes*, 802 S.W.2d at 645–46 (adverse possession is not established when claimant paid taxes on disputed property, grazed cattle and goats on the property, and occasionally repaired fence enclosing the property), *with Butler*, 455 S.W.2d at 945–46 (adverse possession is established when the disputed property was constantly used for grazing, tracts in question were contiguous and operated as a unit, claimant made substantial modifications to fence, and the general reputation in the community was that claimant owned disputed property).