

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JERRY MICHAEL CHANCE D/B/A OUTER LIMITS GAMEROOM, | § | No. 08-13-00248-CV |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| v. | | 153rd District Court |
| | § | |
| ELLIOT & LILLIAN, LLC, | | of Tarrant County, Texas |
| | § | |
| Appellee. | | (TC# 153-257372-12) |
| | § | |

**O P I N I O N**

Appellant Jerry Michael Chance, doing business as Outer Limits Gameroom (Chance), appeals from the trial court's entry of summary judgment in favor of Elliot & Lillian, LLC, (Elliot), Appellee.[1]   Because genuine issues of material fact exist regarding one or more elements of Elliot's breach of contract claim, we reverse the trial court's order granting summary judgment and remand the case for further proceedings.

**BACKGROUND**

On January 10, 2012, Elliot filed a breach of contract suit against Chance, arising from a commercial lease agreement executed by Chance as tenant and Elliot as landlord.  The lease

---

[1]  As this case was transferred from our sister court in Fort Worth, we decide it in accordance with the precedent of that court.  TEX. R. APP. P. 41.3.

agreement had a term of three years, commencing on December 1, 2009, and expiring on December 31, 2012. Under the terms of the agreement, Chance was to pay Elliot a base rent of $2,000 per month.

In its pleadings, Elliot alleged Chance had failed to pay rent due on September 1, 2011, and all subsequent months to the filing of the amended petition filed on November 19, 2012, had abandoned and vacated the premises on or about October 2011, and had made unauthorized and damaging alterations to the property causing damages to the building, requiring extensive repairs in an amount to be determined. Elliot additionally claimed Chance's unauthorized alterations were made in violation of city ordinances, thereby causing Elliot to expend time, effort, and expense to refurbish the property to meet applicable regulations. In its original petition, Elliot requested under Rule 194 that Chance disclose information and materials "contained in Rule 194.2."[2] On January 30, 2012, Chance answered Elliot's assertions by filing a general denial.

On January 11, 2013, Elliot filed its motion for summary judgment in which it asserted that no genuine issue of material fact existed regarding its claims against Chance for breach of contract. In the motion, Elliot asserted that Chance had failed to pay rent under the terms of the agreement and had caused damage to the premises in the amount of $27,701.18, and argued that the summary judgment evidence demonstrated as a matter of law that Chance was indebted to Elliot in the amount of $59,701.18 plus interest and attorney's fees of no less than $9,007.38.

In support of the motion, Elliot presented the testimony of Robert Hafkesbring who by affidavit presented an executed copy of the lease agreement, and stated that Chance had failed to remit rental payments totaling $32,000. Hafkesbring also specified the damage to the premises and submitted an itemized invoice of damages and unpaid charges setting out the labor,

_____

[2] This request for disclosure was omitted in Elliot's amended petition filed on November 19, 2012.

2

equipment, and sales tax arising from the restoration of the damaged premises totaling $27,701.18. As a result of Chance's breach, Hafkesbring stated he was required to engage legal counsel to pursue his breach of contract claims. Elliot also presented the affidavit of his attorney, Thomas E. McElyea, who affixed redacted billing statements setting forth the dates and hours for legal services rendered by Benenati Law Firm, P.C. in support of Elliot's suit, and stated that Elliot had incurred fees and costs in the amount of $9,007.38. The trial court scheduled the summary judgment motion to be heard on February 8, 2013.

In his response, Chance denied any breach on his part, and argued that no damages occurred as the result of any breach, but asserted that Elliot did not tender performance under the contract. In his affidavit, Chance stated that after commencement of the lease, his certificate of occupancy was "pulled," and he was denied a new certificate of occupancy by "code enforcement" because Elliot would not pay to repair the parking lot of the premises or make other repairs as required by the terms of the lease. This, according to Chance, required that he move from the premises, which cost Chance money and business losses. Chance asserted that after he was denied a certificate of occupancy, he provided notice to Elliot that he would need to move his business from the premises because it was a violation of the law and of the lease for him to remain on premises without a certificate of occupancy. Chance also asserted that he had been charged and forced to pay for water service for an adjacent property owned by Elliot because Elliot had not segregated the water bills between the two properties. Last, Chance alleged that he personally observed a new tenant in the premises five months after he vacated it.

On February 1, 2013, Elliot filed a reply to Chance's response and tendered a second Hafkesbring affidavit. In the second affidavit, Hafkesbring contended that Chance's certificate of

3

occupancy was revoked by the City because of Chance's unauthorized modifications to the property, that the water lines to the properties maintain their own meters and are billed separately, and that Chance abandoned the property after refusing to pay rent. Hafkesbring also noted that Chance's affidavit was the first time he had ever known of any issue with the parking lot and that Chance had never complained to him about "water billing or paying issues."

On February 8, 2013, the trial court heard the motion for summary judgment. After each party objected to the other's evidence, and after considering the respective arguments presented regarding the motion for summary judgment, the trial court instructed counsel to submit objections to the evidence the following week and explained that it would first rule on the objections to the evidence and would then rule on the summary judgment motion.

On February 12, 2013, Chance presented two objections. In the first, Chance asserted that the second Hafkesbring affidavit was inadmissible because it was filed within 21 days prior to the summary judgment hearing in contravention of Rule 166a(c). *See* TEX. R. CIV. P. 166a(c), (d)(i). In his second objection, Chance complained that during the summary judgment hearing, Elliot referred to discovery evidence in general, and argued that its failure to refer to discovery evidence in its summary judgment motion, to file discovery with the trial court, and to include a statement of its intent to use specified discovery or discovery references as summary judgment proof barred the use of such discovery as evidence and rendered any reference to discovery inadmissible. *See* TEX. R. CIV. P. 166a(d)(i).

On the same date, Elliot filed its objections to Chance's affidavit and summary judgment response. Elliot alleged that it had served Chance with a request for disclosure on January 13, 2012, to which Chance never responded. Elliot argued that Chance's failure to respond to the

4

request for disclosure constituted an abuse of the discovery process, and contended that Chance's failure to disclose evidence would prevent Chance from introducing the evidence at trial unless he could show good cause for such failure or that the failure to disclose did not result in any unfair surprise or unfair prejudice to Elliot. *See* TEX. R. CIV. P. 194 (requests for disclosure, generally), 193.6(a)(party who fails to make discovery response in timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer testimony of witness not timely identified except on good cause and without unfair surprise or unfair prejudice to other parties). Citing Rule 194.2, which permits a party to request disclosure of the legal theories and, in general, the factual bases of the responding party's claims or defenses, Elliot contended that Chase's affidavit expounded a new legal defensive theory, namely that Elliot's purported breach of the lease agreement formed the basis for Chance's departure from the premises. *See* TEX. R. CIV. P. 194.2(c)(setting out the content that party may be requested to disclose, including legal theories and, in general, factual bases of responding party's claims or defenses). Elliot argued that Chance's new legal theory must be presumed to be contrary to his "previous legal theory of a general denial of any wrongdoing" because Chance did not respond to the request for disclosure and he filed a general denial. Elliot noted that all of the facts alleged by Chance in his affidavit were known to him before the commencement of suit or were known within the discovery period and permitted him to serve adequate responses or supplements to Elliot's disclosure request. Under these circumstances, Elliot contended that Chance's pleadings and discovery responses gave Elliot no notice of Chance's defense and that Chase failed in satisfying his burden to prove the applicable exceptions to Rule 193.6(a). Because Chance failed to respond to Elliot's disclosure request, Elliot complained it was unable to examine Chance's legal theory or conduct

depositions of Chance, and argued that Chance's affidavit should be excluded from evidence.

Finding no genuine issue of material fact, the trial court granted Elliot's motion for summary judgment and ordered that Chance pay Elliot the sums of $32,000 for outstanding rent and interest in the amount of $1,866.67, $27,701.18 for property damage and interest in the amount of $1,615.90, and $9,007.38 for attorneys' fees. The summary judgment order does not expressly state that the trial court considered or ruled on the parties' objections.

## DISCUSSION

Chance presents three issues for our review. In Issue One, Chance argues the trial court erred in granting summary judgment in favor of Elliot because multiple issues of material fact exist. In Issue Two, he asks whether the trial court ruled on the parties' evidentiary objections if its order for summary judgment does not reference them, and specifically asserts that because Elliot did not obtain a ruling on its objections to Chance's summary judgment evidence, Elliot's objections cannot be the subject of its appeal. In Issue Three, Chance asserts that even if the trial court implicitly sustained Elliot's objections, the trial court abused its discretion because the objections are without merit.

### Objections to Summary Judgment Evidence

We first address Issue Two, consider whether the trial court ruled on the parties' objections, and determine the summary judgment evidence we are permitted to consider on appeal. The Fort Worth Court of Appeals has had occasion to address circumstances in which a party has raised objections to summary judgment evidence and to determine whether the trial court implicitly ruled on those objections.

In *Mead v. RLMC, Inc.*, 225 S.W.3d 710, 714 (Tex.App. –Fort Worth 2007, pet. denied),

6

the Court compared two of its earlier rulings in *Frazier v. Yu*, 987 S.W.2d 607, 609-11 (Tex.App. –Fort Worth 1999, pet. denied)(no-evidence summary judgment) and *Wrenn v. GATX Logistics, Inc.*, 73 S.W.3d 489, 497-98 (Tex.App. –Fort Worth 2002, no pet.).  In *Frazier*, a trial court had granted defendant's motion to strike plaintiff's summary judgment affidavit from evidence, entered summary judgment for defendant, noted on its docket sheet that plaintiff had not submitted any summary judgment evidence, and stated in its order that it had reviewed all competent evidence.  *Frazier*, 987 S.W.2d at 609-10.  After observing that "error is preserved as long as the record indicates in some way that the trial court ruled on the objection either expressly or implicitly," the *Frazier* Court determined that the record and circumstances in that case created an inference that the trial court implicitly sustained the defendant's objections to plaintiff's evidence. *Id.* at 610.  The Court did not consider the evidence because plaintiff did not complain of the trial court's implicit ruling on appeal.  *Id.*

In *Wrenn*, the defendant objected to a deposition transcript in the trial court and argued on appeal that the Fort Worth Court of Appeals could not consider such evidence because plaintiff had failed to complain of the trial court's implied ruling on appeal.  *Wrenn*, 73 S.W.3d at 497-98. The Court explained that, unlike *Frazier*, the *Wrenn* record failed to show that the trial court had implicitly sustained defendant's objections as the order granting summary judgment was silent as to any disposition regarding the objections to the evidence or to whether the trial court had considered the complained-of testimony.  *Id.* at 498.  The Court determined that it could not infer that the trial court had sustained the objections to the deposition testimony merely by its granting of the summary judgment motion, and stated, "When we cannot determine what implied ruling is to be inferred, we cannot expect the parties to be able to do so."  *Id.*  The Court declined to hold

7

that plaintiff waived error by failing to recognize and complain of any implicit ruling sustaining the defendant's objections to the summary judgment evidence.  *Id.*

In *Mead*, the trial court initially granted summary judgment in favor of defendant and sustained defendant's objections to plaintiff's summary judgment evidence.  *Mead*, 225 S.W.3d at 714.  After the plaintiffs objected that they had not been provided notice of the trial court's ruling or given and asserted their entitlement to have an opportunity to amend and cure any alleged defects, the trial court rescinded the summary judgment.  *Id.*  The trial court did not sign the proposed order granting the defendant's objections to the plaintiff's evidence but signed a summary judgment order that did not include any ruling on the defendant's objections.  *Id.* Citing *Wrenn,* the Court determined that the mere fact that the trial court had granted defendant's summary judgment motion provided no grounds to permit it to infer that the trial court had sustained defendant's objections.  *Mead*, 225 S.W.3d at 714; *Wrenn*, 73 S.W.3d at 498.  The *Mead* Court determined that the record did not demonstrate that the trial court had ruled impliedly on objections to summary judgment evidence.  *Mead*, 225 S.W.3d at 714.  The Court observed that it was "just as possible that the trial court considered the [plaintiff's] summary judgment evidence and concluded that the evidence did not raise a genuine issue of material fact, particularly in light of the trial court's rescinding the original judgment sustaining the objections, not signing the proposed ruling granting the objections, and entering of a final judgment that does not mention the objections."  *Mead*, 225 S.W.3d at 714.  The *Mead* Court determined that it could consider the plaintiff's summary judgment evidence in the course of its review.  *Id.*

The record of the proceedings in this case is less complex than those presented in *Frazier, Wrenn*, and *Mead.*  Here, at the conclusion of the summary judgment hearing, the trial court

8

expressly asked the parties to submit their objections to the evidence by the following week, and announced, "[B]ased upon how I rule on those, then I'll consider what evidence there is or is not to support summary judgment or defeat summary judgment." However, no proposed rulings on the objections are contained within the record on appeal, and the trial court's order granting summary judgment in favor of Elliot makes no reference to whether it considered the objections and contains no ruling on the evidentiary objections. The trial court merely granted the motion for summary judgment.

Because the record shows only what the trial court intended to do and does not demonstrate that the trial court did consider and rule on the parties' objections, we are compelled to follow the precedence of *Wrenn* and *Mead*. *Mead*, 225 S.W.3d at 714; *Wrenn*, 73 S.W.3d at 498. Because we are unable to conclude that the trial court implicitly ruled on the parties' objections to the summary judgment evidence, we may consider all summary judgment evidence not otherwise excluded from the trial court's consideration.

*Rule 193.6*

Rule 193.6 provides that a party who fails to make a discovery response in a timely manner may not introduce in evidence the untimely disclosed material or information or offer testimony of a witness not timely identified except on good cause and without unfair surprise or unfair prejudice to other parties. TEX. R. CIV. P. 193.6(a). Evidentiary exclusion under Rule 193.6 is applicable in summary judgment proceedings. TEX. R. CIV. P. 193.6; *Ft. Brown Villas III Condominium Ass'n, Inc. v. Gillenwater*, 285 S.W.3d 879, 881 (Tex. 2009).

Elliot contends Chance's affidavit in response to its summary judgment motion is automatically excluded from evidence under Rule 193.6. We disagree.

9

We are guided by the Supreme Court's consideration of the facts in *Gillenwater.* *Gillenwater*, 285 S.W.3d at 881–82. There, the Court examined the trial court's striking of an expert's affidavit after Gillenwater failed to timely disclose the expert pursuant to a scheduling order, and held that the trial court did not abuse its discretion in striking the affidavit under Rule 193.6. *Gillenwater*, 285 S.W.3d at 882. The Court also determined that Gillenwater had failed to establish good cause or lack of unfair surprise or undue prejudice to overcome the exclusion of the expert. *Id.*

Unlike *Gillenwater*, the trial court in this case did not strike any evidence pursuant to Rule 193.6, and did not rule on Elliot's Rule 193.6 objection. A party who fails to obtain written rulings on objections to summary judgment evidence waives the complaint, unless the record contains an implicit ruling by the trial court. TEX. R. APP. P. 33.1(a)(2)(A)(trial court must either expressly or implicitly rule on objection to preserve complaint for review). As discussed above, nothing in the record on appeal establishes that the trial court ruled on this objection, expressly or implicitly. We sustain Issue Two and consider all evidence presented to the trial court in its review of the summary judgment motion and response. Because we have sustained Issue Two, we need not address Issue Three.

### Summary Judgment on Breach of Contract Claim

We next consider Issue One in which Chance contends genuine issues of material fact barred the trial court's grant of summary judgment in favor of Elliot.

### Standard of Review

It is the burden of the traditional summary judgment movant to submit sufficient evidence that establishes on its face that no genuine issue exists as to any material fact and that it is entitled

to judgment as a matter of law.   TEX. R. CIV. P. 166a(c); *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014)(citations omitted).   When a movant meets that burden of establishing each element of the claim or defense on which it seeks summary judgment, the burden then shifts to the non-movant to disprove or raise an issue of fact as to at least one of those elements.   *Amedisys, Inc.*, 437 S.W.3d at 511.

We review a trial court's grant of a motion for summary judgment *de novo*.   *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).   The party moving for traditional summary judgment bears the burden of showing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law.   TEX. R. CIV. P. 166a(c).   To determine whether the non-movant raises a fact issue, we view all evidence presented in the motion and the response in the light most favorable to the non-movant, crediting favorable evidence favorable to the non-movant if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not.   *See Mann Frankfort*, 289 S.W.3d at 848 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)); *see also 20801, Inc. v. Parker,* 249 S.W.3d 392, 399 (Tex. 2008)(reviewing court takes as true all evidence favorable to non-movant, and indulges every reasonable inference and resolves any doubts in non-movant's favor).   If uncontroverted evidence is from an interested witness, it does nothing more than raise a fact issue unless it is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.   TEX. R. CIV. P. 166a(c); *Morrison v. Christie,* 266 S.W.3d 89, 92 (Tex.App. –Fort Worth 2008, no pet.).

*Analysis*

The elements of a breach of contract claim are:   (1) the existence of a valid contract; (2)

11

performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resulting damages to the plaintiff. *See Rice v. Metro. Life Ins. Co.,* 324 S.W.3d 660, 666 (Tex.App. –Fort Worth 2010, no pet.). Elliot's evidence establishes the existence of a valid contract between the parties, Elliot's tender of the premises to Chance for lease, Chance's breach of the agreement occasioned by his failure to pay rent, and unpaid rent and repairs for unauthorized modifications to the premises as Elliot's damages.

The burden then shifted to Chance to disprove or raise an issue of fact as to at least one of the breach of contract elements. *Amedisys, Inc.*, 437 S.W.3d at 511. Chance's affidavit asserts that Elliot did not perform or tender performance under the lease agreement when it failed to make repairs, and that Chance did not breach the contract but was forced to move when Elliot's alleged failure to make repairs purportedly prevented him from securing a certificate of occupancy and occupying the property lawfully. Chance avers in his affidavit that he personally observed that Elliot had obtained "a new tenant five months after I moved my business out of the building."

This conflicting evidence raises questions of fact about whether Elliot performed or tendered performance under the terms of the lease agreement, whether Chance acted in accordance with or in violation of the terms of the lease agreement, and if breach is established by the evidence, whether and to what extent Elliot may have suffered damages. Because genuine issues of material fact exist regarding the elements of Elliot's performance, Chance's breach, and any resulting damages, the trial court erred in granting summary judgment. *Amedisys, Inc.*, 437 S.W.3d at 511. Issue One is sustained.

**CONCLUSION**

12

The trial court's judgment is reversed and the case is remanded for further proceedings.

TEX. R. APP. P.   43.2(d).


                                        YVONNE T. RODRIGUEZ, Justice

April 8, 2015

Before McClure, C.J., Rodriguez, J., and Larsen, J. (Senior Judge)
Larsen, J. (Senior Judge), sitting by assignment