

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| CARLOS LAMAS, | § | No. 08-21-00095-CV |
| Appellant, | § | Appeal from the |
| v. | § | 34th Judicial District Court |
| LUIS RAUL SANDOVAL GONZALEZ, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2020DCV4095) |

## MEMORANDUM OPINION

This interlocutory appeal arises from the trial court's grant of a temporary injunction in favor of Appellee Luis Raul Sandoval Gonzalez (Sandoval). In his original petition, Sandoval alleged that he was buying a house from Appellant Carlos Lamas through a contract for deed. Sandoval claimed that he made regular mortgage payments under the contract, but Lamas later refused to accept payments and attempted to evict Sandoval from the house through several forcible entry and detainer actions. Sandoval sought a temporary injunction that would ensure his ability to continue making payments and enjoy the property during the pendency of the suit, which the trial court granted. Lamas challenges that ruling. For the following reasons, we affirm the trial court's order and remand this case to the trial court for further proceedings.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Procedural History

In his original petition, Sandoval alleged that in June 2015 he entered a contract for deed with Lamas to purchase a house in El Paso, Texas. Sandoval claimed that after making a $20,000 down payment and monthly mortgage payments under the contract for several years, Lamas filed multiple actions for forcible entry and detainer in a justice court to remove Sandoval and his tenants from the house. His petition also claims that Lamas tried to prevent him from making mortgage payments, thereby "engineering a false default [on the contract] so that [Lamas] can take the property back—confiscating the $20,000.00 down payment without right or justification."

Sandoval sued for breach of contract, requested a declaratory judgment, and also sought a temporary injunction preventing Lamas from filing further forcible entry and detainer actions against Sandoval and any tenants residing in the house. In part, he relied on TEX.PROP.CODE ANN. § 5.066(a) that restricts a seller's remedies if a buyer has made more than 48 payments under a contract for deed.

As for injunctive relief, he asked the trial court to: (1) order Lamas to provide login information to the mortgage servicer's online portal so that he (Sandoval) could continue making mortgage payments, or alternatively, that Lamas accept mortgage payments and forward them to the mortgage servicer; (2) enjoin Lamas from interfering with any lease agreements between Sandoval and any third-party tenants; (3) enjoin Lamas from filing any additional forcible entry and detainer proceedings; (4) enjoin Lamas from interfering with the homeowners insurance policy and to name Sandoval as a beneficiary of the policy; and (5) order Lamas to provide Sandoval with a general warranty deed upon completion of Sandoval's obligations under the contract for deed. After Lamas answered the suit, the trial court heard Sandoval's request for a temporary injunction

2

in which the parties presented the evidence recounted below.

### B. Sandoval's Hearing Testimony and Evidence[1]

Sandoval testified that he first met Lamas through a Craigslist advertisement for the sale of a house in El Paso, Texas. Lamas's advertisement sought a buyer who could make an initial down payment on the house and continue to make monthly payments on a pre-existing mortgage until the mortgage was paid off, at which point title to the house would pass from Lamas to the buyer.

In June 2015, Sandoval and Lamas signed a document titled "Contrato de Transpaso," (written in Spanish) which appears to be a contract for deed to the house. Lamas drafted the document. Under its terms, Sandoval was to make an initial $20,000 down payment, to be followed by monthly payments of $549.89 on Lamas's pre-existing mortgage with Bank of America until the mortgage was paid in full. To allow for those payments, Lamas provided Sandoval with login information to the bank's online portal and payment system. That same day, Sandoval and Lamas also signed an "Assignment of Real Estate Contract and Sale Agreement," which provided that Lamas would transfer the house's title and his interest to Sandoval based on the terms of a copy of the contract for deed that had been translated into English.

Sandoval paid an initial $2,000 portion of the $20,000 down payment, and moved into the house, claiming it as his homestead. A handwritten receipt that appears to be attached to the Contrato de Transpaso also states "Balance of $18,000 for a total of $20,000." Sandoval then began to make monthly payments on the mortgage. Sandoval asserted that from June 2015 to September 2020, a period of around 62 months, he did not miss any monthly mortgage payments.

---

[1] The parties are well familiar with the testimony presented below. We summarize only that testimony relevant to the several issues necessary for our decision. *See* TEX.R.APP.P. 47.4 ("If the issues are settled, the court should write a brief memorandum opinion no longer than necessary to advise the parties of the court's decision and the basic reasons for it.").

3

At some point, Select Portfolio Servicing, Inc. (SPS) became the mortgage servicer.

Sandoval moved to Mexico. While he was gone, he rented the house to tenants, but he moved back into the house about two to three months before the injunction hearing. While acknowledging that he worked in Mexico, he claimed to still live in the house "intermittently." When Sandoval had the house rented, he claimed that Lamas ran off two renters and threatened to evict another.

In October 2020, Lamas changed the password on the bank's login portal without explanation, preventing Sandoval from making further payments on the mortgage. Sandoval then sent Lamas a $2,280.00 personal check via certified mail for the October 2020 through January 2021 mortgage payments. Sandoval also sent a separate check through his attorney for the February 2021 payment. Prior to the temporary injunction hearing, Lamas had filed three forcible entry and detainer actions in a justice court to evict Sandoval.

The record also reflects some dispute over the authenticity of Lamas's signature on some documents. As for that issue, Sandoval presented testimony from Samuel Madrid who notarized the contract documents. While Madrid was not present when the Spanish version of the contract for deed was signed, his signature is present on both the "Assignment of Real Estate Contract" and the translated version of the contract for deed. Madrid recalled notarizing the documents and stated that if his signature was present on the documents, it meant that he followed his standard practice of verifying a person's identification while he was physically present with the person.

Madrid's office assistant translated the handwritten contract for deed from Spanish to English. And Madrid, who is fluent in Spanish, stated that the original contract for deed provided "that the compensation of $18,000 was given and a total of $20,000 was paid."

### C. Lamas's Hearing Testimony and Evidence

Lamas related a different version of events. He testified that he was a co-owner of the house with Sandra Lamas Marquez, to whom he was married at the time the contract for deed was signed. But he later admitted that the couple was divorced almost two years before the contract for deed was executed. And he did not know whether Marquez was awarded any interest in the house in the divorce.

Lamas acknowledged that he signed the Spanish version of the contract for deed and wrote some of its language by hand. Lamas further agreed that he and Sandoval signed both the "Assignment of Real Estate Contract and Sale Agreement" and the "Real Estate Purchase and Sale Agreement." Even so, he claimed that his signatures on Sandoval's *copies* of the documents were forged, and he reported this fact to the El Paso Police Department.[2] Nonetheless, Lamas acknowledged that he signed a different copy of the documents which were filed of record in one of the justice court proceedings. Lamas also claimed that he never met Samuel Madrid, the notary whose name and stamp were present on these documents, and that Madrid never notarized the documents in his presence.

Lamas contended that although Sandoval paid the first $2,000 of the $20,000 down payment, he never paid the remaining $18,000 down payment. Lamas acknowledged that Sandoval regularly paid the $549.59 monthly mortgage payments through an online portal from June 2015 through June 2019, but he learned that payments for July, August, and September 2019 were missing. He acknowledged, however, that Sandoval soon made good on those payments.

---

[2] Detective Randy Serna of the El Paso Police Department testified at the hearing that he was assigned to investigate Lamas's allegation. Detective Serna forwarded the case to the District Attorney's Office, but he did not make a recommendation about whether the case should be prosecuted. Serna testified that he did not believe that there was enough evidence to acquire an arrest warrant for Sandoval.

At some point, Sandoval informed Lamas that he (Sandoval) had not been living at the house because he could not enter the United States legally, and that he had leased the house to another individual who was supposed to be making the payments. This upset Lamas because he claimed that there was an oral agreement that Sandoval would not rent the property to third parties.

Lamas presented a document from SPS reflecting the mortgage payment history for the house. This document shows that there were late payment charges for the months of July 2019, and September through December of the same year. Lamas also presented a document from SPS that stated it was possible for SPS to accept mortgage payments from a third party. Lamas claimed he made the mortgage payments for September 2020 through December 2020 and February 2021 out of his personal account. Lamas sent Sandoval a letter informing him that he had breached the terms of the contract.

Lamas conceded that he had not complied with the requirements under the Texas Property Code for a contract for deed, including: (1) his obligation to record the contract for deed; (2) provide an annual accounting; (3) provide insurance naming Sandoval as a beneficiary; or (4) comply with the proper procedure for eviction.

Finally, Lamas complained about the condition of the house and the tenants that Sandoval had rented the house to. He presented estimates for repairs on the house and photographs appearing to show damage to the house's roof, window frame, wall, garage door, walls, and ceiling. A neighbor who lived next door to the house testified that in September 2019, the police had swarmed the house. The next day, the neighbor went inside the house with Lamas and saw that the house was a "complete mess. There was . . . poop all over . . . the place and like, clothes everywhere . . . There [were] holes in the walls." The neighbor noticed the presence of drug paraphernalia and the smell of marijuana in the house (an adult male, an adult female, and an infant

6

were residing in the house then).   Another neighbor testified that one of the tenants in the house was selling marijuana and that he frequently smelled marijuana coming from the house.   The same neighbor never recalled seeing Sandoval at the house.

### D.  Trial Court's Ruling

At the end of the hearing, the trial court orally granted Sandoval's request for a temporary injunction.   In its written order, the court enjoined Lamas from: (1) filing additional forcible entry and detainer actions against Sandoval; (2) interfering with Sandoval's ability to make mortgage payments as they come due; and (3) interfering with any tenants or lease agreements between Sandoval and any third parties.   The court further ordered Sandoval to make mortgage payments through the SPS online portal as a "guest," by telephone, or by mail.   The court also set a bond of $100.   Lamas filed a request for findings of fact and conclusions of law on the temporary injunction order,   as well as a notice of past-due findings and conclusions,   but the record before us contains no findings and conclusions.[3]   This appeal from the trial court's interlocutory order follows.   *See* TEX.CIV.PRAC.& REM.CODE ANN. § 51.014(a)(4) (permitting appeal from interlocutory order granting a temporary injunction).

## II.  ISSUES ON APPEAL

Lamas raises eleven issues on appeal.   In the interest of clarity and efficiency, we construe Lamas's claims as challenges to the temporary injunction order on these grounds:   (1) Sandoval failed to join Lamas's ex-wife, Sandra Lamas Marquez, as a necessary party, and to serve her with notice of the temporary injunction proceeding; (2) Sandoval failed to demonstrate that TEX.PROP.CODE ANN. §§ 5.062 and 5.066(a) on which his suit is based, apply here; (3) the court's

---

[3] Although Lamas points out that the trial court did not enter findings of fact or conclusions of law in response to his request, he does not argue that the trial court erred by doing so.

7

order is invalid because it was not supported by an affidavit in compliance with TEX.R.CIV.P. 682; (4) the court's order is invalid because it lacks sufficient specificity and failed to set the cause for trial, violating TEX.R.CIV.P. 683; (5) the court's order is invalid because it failed to set a reasonable bond, violating TEX.R.CIV.P. 684; (6) the court's order is invalid because it decides the merits of the dispute; and (7) the evidence shows that Lamas did not breach the contract. We address Lamas's issues together where appropriate.

### III.  FAILURE TO JOIN AND SERVE MARQUEZ

In his first and third issues, Lamas argues that the trial court's temporary injunction order must be reversed because Sandoval failed to join Lamas's ex-wife (and purported co-owner of the house) as a necessary party. Texas Rule of Civil Procedure 39 governs the joinder of necessary parties and requires that a person be joined if "in his absence complete relief cannot be accorded among those already parties." *Henry v. Cox*, 520 S.W.3d 28, 34 (Tex. 2017), *citing* TEX.R.CIV.P. 39(a)(1). If a necessary party cannot be joined, the court must determine "whether in equity and good conscience the action should proceed." *Id.*, *citing* TEX.R.CIV.P. 39(b). We review a trial court's decision on a matter of joinder for an abuse of discretion. *Conrad Constr. Co., Ltd. v. Freedmen's Town Preservation Coal.*, 491 S.W.3d 12, 16 (Tex.App.--Houston [14th Dist.] 2016, no pet.).

In his pleadings, Lamas asserted that his ex-wife, Marquez, retained an interest in the house when Sandoval filed for the temporary injunction. In support, Lamas produced a deed from 1999 that showed he and Marquez owned the house. Nevertheless, the contract for deed between Sandoval and Lamas, along with the other associated documents, reflects that Marquez was not a party to—or even mentioned in—the contract. Sandoval testified that Lamas never told him that any other individuals had an ownership interest in the house. At the temporary injunction hearing,

8

Lamas admitted that he divorced Marquez before the contract for deed was signed, and he claimed not to know whether Marquez retained any interest in the house following the divorce. The record is bare of any other evidence tending to establish that Marquez possessed any interest in the house following her divorce from Lamas or at the time of the temporary injunction hearing.

The trial court was free to find, based on Lamas's equivocal testimony on the matter, that Marquez no longer possessed an interest in the house. Because there is no evidence that complete relief could not be given to Sandoval or Lamas without joining Marquez in this temporary injunction action, the trial court did not abuse its discretion by refusing to require Marquez's joinder before the issuance of the temporary injunction. And for the same reasons, we conclude that Marquez was not an adverse party whom Sandoval needed to serve with notice of the temporary injunction hearing. *See* TEX.R.CIV.P. 681 (requiring notice to be given to an adverse party before the issuance of a temporary injunction).

Lamas's Issues One and Three are overruled.

## V. SUFFICIENCY OF THE EVIDENCE

In his second, eighth, and ninth issues, Lamas argues that the trial court abused its discretion by granting the temporary injunction because the evidence did not establish: (1) the applicability of TEX.PROP.CODE ANN. §§ 5.062 and 5.066, which would restrict a seller's rescission remedies for breach of a contract for deed; (2) that Lamas breached the contract for deed; and (3) that a valid contract for deed between Sandoval and Lamas existed. We construe these complaints as challenges to the sufficiency of the evidence supporting the trial court's order.

### A. Standard of Review

A movant for a temporary injunction "must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable,

9

imminent, and irreparable injury in the interim." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). At a temporary injunction hearing, the applicant need not present the underlying merits of the controversy or establish the applicant will ultimately prevail. *See LasikPlus of Texas, P.C. v. Mattioli*, 418 S.W.3d 210, 216 (Tex.App.--Houston [14th Dist.] 2013, no pet.); *see also Camp Mystic, Inc. v. Eastland*, 399 S.W.3d 266, 272-73 (Tex.App.--San Antonio 2012, no pet.) ("At the hearing for a temporary injunction, the applicant is not required to establish that it will prevail on final trial."). But the applicant must show a probability of success by presenting evidence that tends to sustain the cause of action. *Mattioli*, 418 S.W.3d at 216.

We review a trial court's order granting or denying a temporary injunction for an abuse of discretion. *Davis v. Huey*, 571 S.W.2d 859, 861-62 (Tex. 1978). As for questions of fact, "[a]n abuse of discretion does not exist where the trial court bases its decisions on conflicting evidence." *Id*. at 862. Stated otherwise, a trial court does not abuse its discretion if some evidence reasonably supports the court's ruling on a temporary injunction. *Henry*, 520 S.W.3d at 34. But the court has no "discretion" to incorrectly analyze or apply the law. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) ("[A] clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion . . . ."). Where, as here, no findings of fact or conclusions of law are entered, the trial court's grant or denial of a temporary injunction must be upheld on any legal theory supported by the record. *LasikPlus of Texas, P.C.*, 418 S.W.3d at 216. The trial court sits as fact finder and has the discretion to believe or disbelieve a witness's testimony; we may not disturb its findings so long as they fall within the "zone of reasonable disagreement." *Yardeni v. Torres*, 418 S.W.3d 914, 918 (Tex.App.--El Paso 2013, no pet.)*, quoting City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005) ("A reviewing court cannot substitute its judgment for that of the trier-of-fact" if the evidence "would enable reasonable and fair-minded people to differ in their

10

conclusion").

## B. Sections 5.062 and 5.066 of the Property Code

Texas Property Code Chapter 5, Subchapter D, governs executory contracts for the conveyance of real property, including contracts for deeds. *See* TEX.PROP.CODE ANN. §§ 5.061-.087; *see also White v. Calvache*, No. 05-17-00127-CV, 2018 WL 525684, at *5 (Tex.App.--Dallas Jan. 24, 2018, no pet.) (mem. op.) (recognizing that Subchapter D applies to an "executory contract," such as a contract for deed), *citing Reeder v. Curry*, 294 S.W.3d 851, 856 (Tex.App.--Dallas 2009, pet. denied); *Shook v. Walden*, 368 S.W.3d 604, 627 (Tex.App.--Austin 2012, pet. denied). When Chapter 5 applies, the section restricts a seller's remedies for breaches and imposes specific obligations on the seller. *See, e.g.*, TEX.PROP.CODE ANN. § 5.063 (contents of required notices); § 5.064 (requiring notice and opportunity to cure as predicates for rescission, forfeiture and acceleration remedies); § 5.065 (right to cure); § 5.069 (seller's disclosure requirements); § 5.076 (recording requirement imposed on seller); § 5.077 (annual accounting statement required of seller).[4] Sandoval's injunction is based in part on the application of Subchapter D.

In his second issue, Lamas argues that Subchapter D, and specifically sections 5.062 and 5.066, do not apply to this transaction. He bases this contention on the argument that: (1) Sandoval did not use the house as his primary residence, as required by section 5.062; and (2) the contract for deed was never recorded with the county clerk, rendering section 5.066 inapplicable. We construe Lamas's argument as a challenge to the sufficiency of the evidence supporting the

---

[4] Passed in 1995, Chapter 5 was intended to address serious abuses in the Texas–Mexico border region known as "the colonias," where many residents were financing the purchase of their homestead properties through contracts for deed. *In re Garza*, 462 B.R. 638, 641–42 (Bankr. N.D. Tex. 2011). Later amendments to Chapter 5 have expanded those protections. *Id. citing Flores v. Millennium Interests, Ltd.,* 185 S.W.3d 427, 429 (Tex. 2005).

basis on which Sandoval sought the temporary injunction—namely, that the relevant statutes prevented Lamas from attempting to evict Sandoval from the house.

As relevant here, section 5.062(a) (which governs the applicability of Subchapter D) applies to "an executory contract for conveyance of real property used or to be used as the purchaser's residence[.]" *Id.* § 5.062(a). If it applies, two other provisions are relevant to our view of Lamas's remedies for any breach of the agreement: section 5.064 and 5.066. Section 5.064 provides:

> A seller may enforce the remedy of rescission or of forfeiture and acceleration against a purchaser in default under an executory contract for conveyance of real property only if:
>
> (1) the seller notifies the purchaser of:
>
> (A) the seller's intent to enforce a remedy under this section; and
>
> (B) the purchaser's right to cure the default within the 30-day period described by Section 5.065;
>
> (2) the purchaser fails to cure the default within the 30-day period described by Section 5.065;
>
> (3) Section 5.066 does not apply; and
>
> (4) the contract has not been recorded in the county in which the property is located.

TEX.PROP.CODE ANN. § 5.064.[5] Section 5.066, also contained within Subchapter D, contains the "40 or 48 Rule":

> If a purchaser defaults after the purchaser has paid 40 percent or more of the amount due or the equivalent of 48 monthly payments under the executory contract or, regardless of the amount the purchaser has paid, the executory contract has been recorded, the seller is granted the power to sell, through a trustee designated by the seller, the purchaser's interest in the property as provided by this section. The seller may not enforce the remedy of rescission or of forfeiture and acceleration after the contract has been recorded.

---

[5] In 2015, the legislature amended section 5.064 and 5.066 to add language dealing with recording of executory contracts. For the revisions to these sections, the change in the law applies only to "a default" that occurs after the effective date of the Act—September 1, 2015. Act of June 19, 2015, 84th Leg., R.S., Ch. 996, § 9, 2014 Tex. Gen. Laws 3529, 3532. We assume that Lamas contends any default occurred after that date.

*Id*. § 5.066(a).

In support of his request for a temporary injunction preventing Lamas from filing additional forcible entry and detainer actions, Sandoval argued that section 5.066(a) prevented Lamas from pursuing that remedy because Sandoval had made more than 48 payments on the mortgage by the time this litigation began.   Lamas first argues that section 5.062 is inapplicable under these facts because Sandoval did not reside at the house.   Sandoval responds that his testimony that he lived at the house at the time of the temporary injunction hearing established the applicability of sections 5.062 and 5.066.   Sandoval testified that although he had spent time living in Mexico and had rented the house to tenants in the past, he was currently living at the house and using it as his primary residence.   We find this evidence sufficient to establish section 5.062's applicability. The statute uses the phrase "used or to be used" as the purchaser's residence.   The statute does not say, "exclusively used," and therefore does not preclude there being some gap in the purchaser's use of the property as a residence.

The Texas Supreme Court has generally held that for individuals, "'residence' means the '[p]lace where one actually lives or has his home; a person's dwelling place or place of habitation; . . . a dwelling house'" and that permanent residence "requires a home and fixed place of habitation to which a person intends to return when away."   *Owens Corning v. Carter*, 997 S.W.2d 560, 571 (Tex. 1999) *quoting Residence*, BLACK'S LAW DICTIONARY 907 (6th ed. 1991).   Courts have also stated that an individual need not be physically present within the home to claim it as their residence, and that a person may live temporarily in one place while maintaining a residence in another.   *See Ferrara v. Nutt*, 555 S.W.3d 227, 237 (Tex.App.--Houston [1st Dist.] 2018, no pet.), *quoting Dickey v. McComb Dev. Co*., 115 S.W.3d 42, 45 (Tex.App.--San Antonio 2003, no pet.); *Malnar v. Mechell*, 91 S.W.3d 924, 928 (Tex.App.--Amarillo 2002, no pet.). In addition, "the fact

that an individual leases the abode while physically absent from it does not mean, by itself, that the abode is no longer his residence." *Ferrara*, 555 S.W.3d at 237, *quoting Dickey*, 115 S.W.3d at 45; *Malnar*, 91 S.W.3d at 929 (internal quotation marks omitted). Thus, even assuming that Sandoval was not living in the house, and had intermittently rented the house out to others while he was away, section 5.062 still applies.

Having established that section 5.062 applies, we address Lamas's claim that section 5.066 does not apply. Sandoval had made over 48 payments on the mortgage at the time of the hearing. Lamas argues, however, that the remedies for rescission, forfeiture and acceleration do not apply because the contract had not been recorded. Lamas testified that he never recorded the contract and that he was unaware of statutory penalties for failure to do so. But as Sandoval argued in the trial court, it was Lamas's—not Sandoval's—responsibility to record the contract under Subchapter D. *See* TEX.PROP.CODE ANN. § 5.076(a) (providing that "the seller shall record the executory contract . . . on or before the 30th day after the date the contract is executed.").[6]

In sum, it was not Sandoval's burden to establish that he would ultimately prevail on his claims at trial. Instead, it is sufficient that he established a probable right to recovery and a probable injury in the interim, which warrants preservation of the status quo before trial. *See Walling v. Metcalfe*, 863 S.W.2d 56, 57-58 (Tex. 1993). As for his reliance on sections 5.062 and 5.066, Sandoval has satisfied his burden by establishing that he made more than 48 payments on the mortgage at the time of the hearing. We conclude the trial court did not abuse its discretion by enjoining Lamas from filing additional forcible entry and detainer actions.

---

[6] Moreover, section 5.062 deals with specific remedies: a trustee's sale, rescission, forfeiture, and acceleration. In contrast, the injunction bars Lamas from pursuing an eviction through a forcible detainer action in a justice court. Section 5.062 does not expressly address an eviction based on a default of an executory contract. Thus, whether section 5.062 applies to this dispute does not dictate the propriety of the injunction against filing additional forcible entry and detainer actions.

14

Lamas's Issue Two is overruled.

## C.  Existence of Breach of a Valid Contract

In his eighth and ninth issues, Lamas argues that the evidence fails to show the existence of a valid contract, or a breach of contract, sufficient to support the grant of the temporary injunction.  We also construe these issues as a challenge to the sufficiency of the evidence supporting Sandoval's probable right to recovery and injury on his breach of contract claim.

The elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resulting damages to the plaintiff.  *Chance v. Elliot & Lillian, LLC*, 462 S.W.3d 276, 283 (Tex.App.--El Paso 2015, no pet.).  As for the first element, Sandoval introduced several copies of a contract for deed between himself and Lamas, including a version of the contract that Lamas admitted to partially drafting himself.  Lamas testified that he signed at least one version of the contract and that it was his understanding that he was entering a contract with Sandoval for the sale of the house.  As for the second element, the parties disagreed about whether Sandoval had paid the full $20,000 down payment under the contract or timely made every mortgage payment.  But the trial court did not abuse its discretion in favoring Sandavol's evidence, and discounting Lamas, particularly where issues of credibility color the dispute.  Turning to the third element, Sandoval testified that Lamas changed the password on the mortgage servicer's online portal, thus cutting off Sandoval's means of continuing to make payments and rendering performance of Sandoval's obligations under the contract difficult or impossible.  Finally, the probable injury Sandoval would have suffered is obvious; had the trial court not granted the temporary injunction, it was possible that he could have been evicted from the house, or put to the burden to defend against additional forcible entry and detainer actions.

Based on this evidence, Sandoval satisfied his burden of establishing a probable right to recovery at trial, and showing the existence of probable injury in the interim that justified preservation of the status quo. We hold that the trial court did not abuse its discretion by granting the temporary injunction on this basis.

Lamas's Issues Eight and Nine are overruled.

## VI. LACK OF AFFIDAVIT

In his fourth issue, Lamas argues that the trial court violated TEX.R.CIV.P. 682 by granting the temporary injunction without a supporting affidavit. Under Rule 682, "No writ of injunction shall be granted unless the applicant therefor shall present his petition to the judge verified by his affidavit and containing a plain and intelligible statement of the grounds for such relief." TEX.R.CIV.P. 682. But a verified petition for injunctive relief is not required "when a full evidentiary hearing on evidence independent of the petition has been held." *Mattox v. Jackson*, 336 S.W.3d 759, 763 (Tex.App.--Houston [1st Dist.] 2011, no pet.), *citing Georgiades v. Di Ferrante*, 871 S.W.2d 878, 882 (Tex.App.--Houston [14th Dist.] 1994, writ denied). Here, the trial court held an evidentiary hearing spanning three days on the request for a temporary injunction, and thus no verification was required. *See id.*; *see also Hughes v. Age Indus., Ltd.*, No. 04-16-00693-CV, 2017 WL 943423, at *2 (Tex.App.--San Antonio Mar. 8, 2017, no pet.) (mem. op.) (holding that a verified petition in support of a temporary injunction request was unnecessary under rule 682 because the trial court held a full evidentiary hearing on the injunction request).

Lamas's Issue Four is overruled.

## VII. FAILURE TO COMPLY WITH RULE 683

In his fifth issue, Lamas argues that the trial court erred by disregarding the form

16

requirements for an injunctive order found in TEX.R.CIV.P. 683.[7]  In pertinent part, Rule 683

provides: "Every order granting an injunction and every restraining order shall set forth the reasons

for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference

to the complaint or other document, the act or acts sought to be restrained . . ."  TEX.R.CIV.P. 683.

"[T]he obvious purpose of [Rule 683] is to adequately inform a party of what he is enjoined from

doing and the reason why he is so enjoined." *El Tacaso, Inc. v. Jireh Star, Inc.*, 356 S.W.3d 740,

744 (Tex.App.--Dallas 2011, no pet.), *quoting Schulz v. Schulz*, 478 S.W.2d 239, 244-45

(Tex.App.--Dallas 1972, no writ).  For this reason, the order itself must contain the reasons for its

issuance. *See In re Chaumette*, 456 S.W.3d 299, 305 (Tex.App.--Houston [1st Dist.] 2014, no

pet.), *citing Reliant Hosp. Partners, LLC v. Cornerstone Healthcare Grp. Holdings, Inc.*, 374

S.W.3d 488, 495 (Tex.App.--Dallas 2012, pet. denied) ("Even if a sound reason for granting relief

appears elsewhere in the record, the Texas Supreme Court has stated in the strongest terms the rule

must be followed.").  The explanation must include specific reasons and not merely conclusory

statements.  *Id.*, *citing Kotz v. Imperial Capital Bank*, 319 S.W.3d 54, 56-57 (Tex.App.--San

Antonio 2010, no pet.).  Mere recitals on harm are insufficient.  *See id.*, *citing AutoNation, Inc.*

*v. Hatfield*, 186 S.W.3d 576, 581 (Tex.App.--Houston [14th Dist.] 2005, no pet.).

Here, the trial court's order, in pertinent part, reads as follows:

> On considering the evidence received and the argument of counsel, the Court is of
> the opinion that without a temporary injunction as requested by Plaintiff, that the
> Plaintiff will be left without adequate remedy at law and will be irreparably harmed.
> The Court is of further opinion that without the issuance of a temporary injunction
> the Defendant, Carlos Lamas, will alter the status quo and tend to make ineffectual
> a judgment in favor of Plaintiff *by creating circumstances that will lead to the loss*

---

[7] Sandoval notes that Lamas did not object to the form of the order below.  But this Court has recognized that a temporary injunction order that does not comply with Rule 683 can be reviewed even if a defendant does not raise an objection on this basis in the trial court.  *See Fasken v. Darby*, 901 S.W.2d 591, 593 (Tex.App.--El Paso 1995, no writ); *see also Hoist Liftruck Mfg., Inc. v. Carruth-Doggett, Inc.*, 485 S.W.3d 120, 124 (Tex.App.--Houston [14th Dist.] 2016, no pet.) (recognizing that this Court has held that a party need not preserve error on a complaint that a temporary-injunction order does not comply with Rule 683).  Thus, we will address Lamas's complaint on the merits.

*of the real property made the subject of this lawsuit through foreclosure.*

(emphasis added). Although the order contains some conclusory language, such as its statement that "the Plaintiff will be left without adequate remedy and will be irreparably harmed," the order also states *why* Sandoval would suffer irreparable harm. Unless enjoined, Lamas would create "circumstances that will lead to the loss of the real property made the subject of this lawsuit through foreclosure." Because this language explains the particular harm that Sandoval would face if the injunction was not issued, we hold that this language satisfies rule 683's specificity requirement. *Cf. El Tacaso, Inc.*, 356 S.W.3d at 747 (holding that a temporary injunction order that merely stated that the plaintiff "will suffer an irreparable injury for which it has no other adequate legal remedy" failed to satisfy Rule 683's specificity requirement).[8]

Lamas's Issue Five is overruled.

## VIII. FAILURE TO SET A REASONABLE BOND

In his sixth issue, Lamas argues that the trial court failed to set a reasonable bond in compliance with TEX.R.CIV.P. 684. Before granting a temporary injunction, the trial court must require the applicant to post a bond in the sum fixed by the trial court payable to the adverse party. TEX.R.CIV.P. 684. The bond secures payment to the party against whom the injunction is granted in the amount of damages he would suffer if the injunction is later dissolved. *Biodynamics, Inc. v. Guest*, 817 S.W.2d 128, 130 (Tex.App.--Houston [14th Dist.] 1991, writ dism'd by agr.). The trial court has considerable discretion in setting the amount of the bond. *Id.* at 131; *see also IAC, Ltd. v. Bell Helicopter Textron, Inc.,* 160 S.W.3d 191, 203 (Tex.App.--Fort Worth 2005, no pet.). We review case-by-case the adequacy of a bond set by the trial court based on the record before

---

[8] Lamas further argues that the trial court also violated Rule 683 because it did not set the cause for trial. But he acknowledges in his reply brief that the case is currently set for a bench trial. As a result, we find this contention to lack merit.

us.  *IAC, Ltd.,* 160 S.W.3d at 203.

The trial court set a bond of $100 in its written order.   Lamas contends that this amount is insufficient, pointing to the *allegation in his pleadings* that he stood to lose over $50,000 from the grant of the temporary injunction.   Nonetheless, Lamas does not direct our attention to any *evidence in the record* that supports the contentions in his pleadings; nor does he explain how the trial court's grant of the temporary injunction would cause him to suffer such losses.[9] For these reasons, Lamas has not shown that the trial court abused its discretion by setting a $100 bond. *See id.*; *see also Hsin-Chi-Su v. Vantage Drilling Co.*, 474 S.W.3d 284, 304 (Tex.App.--Houston [14th Dist.] 2015, pet. denied) (recognizing that to establish an insufficient bond amount under Rule 684, a party must present more than general and conclusory evidence that he would suffer a claimed amount of damages if an injunction is granted).

Lamas's Issue Six is overruled.

## IX.  FINAL RELIEF

In his seventh issue, Lamas argues that the trial court erred by granting the temporary injunction because its order granted Sandoval control of the property, thus inappropriately determining the merits of the underlying lawsuit.   If the effect of granting the temporary injunction accomplishes the whole object of this suit, it is improper for the court to grant the injunction.   *See Guerrero v. Satterwhite*, No. 13-11-00181-CV, 2011 WL 3855741, at *2 (Tex.App.--Corpus Christi Aug. 31, 2011, no pet.) (mem. op.), *citing Texas Foundries, Inc. v. Int'l Moulders & Foundry Workers' Union*, 248 S.W.2d 460, 464 (Tex. 1952).   Yet in certain property disputes, a trial court must still determine who has the legal right to possession before the requested

---

[9] Nor is it incumbent upon this Court to scour the record for evidence that supports Lamas's contentions or to make his arguments for him.   *See, e.g.*, *Aguilar v. Morales*, 162 S.W.3d 825, 838 (Tex.App.--El Paso 2005, pet. denied).

19

relief of legal ownership can be granted. *See id.* (holding that a trial court did not abuse its discretion by granting a temporary injunction request in a conversion case because the trial court necessarily decided the right to immediate possession before determining the ultimate issue of legal title at trial).

Through its temporary injunction order, the trial court did not decide the merits of Sandoval's breach of contract claim or issue a declaratory judgment that Sandoval has legal title to the house. Rather, the order sought to preserve the status quo pending a final resolution of the merits at trial by: (1) preventing Lamas from filing additional forcible entry and detainer actions to remove Sandoval from the house; (2) allowing Sandoval to continue to make mortgage payments on the house; and (3) permitting Sandoval to rent the house to third parties without Lamas's interference. Because the trial court necessarily had to decide the immediate right of possession before making a final determination at trial of who has legal title to the house, we find no abuse of discretion. *See Guerrero*, 2011 WL 3855741, at *2-3.

Lamas's Issue Seven is overruled.

## X. MISCELLANEOUS ISSUES

In his tenth and eleventh issues, Lamas argues that the trial court's grant of the temporary injunction should be reversed for reasons already explained in his previous issues. Lamas's brief on these issues contains no citations to the record or applicable authority, and thus it does not comply with the applicable rules for appellate briefs. For this reason, these arguments are not presented for our review and are waived. *See* TEX.R.APP.P. 38.1(i); *see also Randolph v. Texaco Expl. & Prod., Inc.*, 319 S.W.3d 831, 835 (Tex.App.--El Paso 2010, pet. denied) (appellant's failure to properly cite in his brief the applicable standard of review and authority or analyze the issues resulted in waiver of his appellate claim).

20

Lamas's Issues Ten and Eleven are overruled

## VII. CONCLUSION

We affirm the trial court's grant of the temporary injunction and remand this case to the trial court for further proceedings consistent with this opinion.

JEFF ALLEY, Justice

August 30, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.